[L. A. No. 1972. In Bank.—October 16, 1908.]

## C. E. NORTON et al., Respondents, v. CHARLES N. BASSETT et al., Defendants. CHARLES N. BASSETT, Appellant.

TRUST—LEGAL TITLE TAKEN FOR BENEFIT OF SEVERAL PURCHASERS—VOLUNTARY TRUSTEE—STATUTE OF LIMITATIONS.—Where the legal title to a tract of land purchased by several associates is taken in the name of one of them, in trust to be disposed of and the proceeds divided among the associates, the grantee becomes a voluntary trustee, and as to him the statute of limitations does not commence to run until he has made a repudiation of the trust.

ID.—DEATH OF VOLUNTARY TRUSTEE—SUCCESSOR BECOMES INVOLUNTARY TRUSTEE—RUNNING AND BAR OF STATUTE OF LIMITATIONS.—Upon the death of such grantee, the person in whom the legal title vested became an involuntary trustee, upon whom was imposed no duty except to preserve and protect the trust property and to account to the beneficiaries for it and to turn over to them their share of it; and the statute of limitations commenced to run against such beneficiaries immediately on the death of the grantee, and the bar of the statute became complete upon the expiration of four years thereafter. No disaffirmance of the trust on the part of the successor was necessary to set the statute in motion.

ID.—REPUDIATION OF TRUST.—In this state no repudiation of an implied or a constructive trust—as an involuntary trust always is—is necessary to set the statute of limitations in operation.

ID.—NEITHER ADMINISTRATOR NOR GUARDIAN CAN CHANGE NATURE OF TRUST—PROMISE OF MINOR.—Neither the administrator of the estate of the deceased voluntary trustee, nor the guardian of a minor upon whom the title to the trust property devolved, had any authority, by recognizing the existence of the trust, to change the relation of such minor to the property from that of an involuntary to that of a voluntary trustee. Nor did the promise of such minor to make an accounting when he attained his majority accomplish it.

ID.—ORAL RECOGNITION OF TRUST.—No oral recognition of the trust by the successor to the property would operate to change his relation from a constructive to an express trustee.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Flint & Barker, Barker & Bowen, and Gray, Barker & Bowen, for Appellant.

Tanner, Taft & Odell, and W. R. Bacon, for Respondents.

LORIGAN, J.—This cause was originally decided on appeal by the district court of appeals for the second appellate district. The judgment of the superior court was there affirmed and on petition of appellant the case was ordered to this court to be reheard.

The action was brought to have a trust declared and for an accounting of the rents, issues, and profits and the proceeds of sale of a portion of the trust property. Plaintiffs obtained judgment and the defendant Bassett appealed from it and from an order denying his motion for a new trial.

It was alleged in the complaint that in February, 1895, the plaintiffs and one O. T. Bassett, who was the father of the defendant Charles N. Bassett, and the defendant Roll agreed to jointly purchase the Workmen Ranch, consisting of 814 acres of land in Los Angeles County, for the price of $44,-812.34, and that they should purchase and own the said lands in the following proportions, to wit, O. T. Bassett ten sixteenths thereof, the plaintiffs five sixteenths, and the said Roll one sixteenth; that O. T. Bassett, in addition to paying his own proportion of the purchase price, would advance and loan to plaintiffs and Roll such amounts of money above what they were able to advance themselves, as were necessary to pay their proportionate shares of the purchase price; that the legal title to the property was to be taken in the name of O. T. Bassett and held by him in trust to secure the advances to be made by him for plaintiffs and Roll, and for the benefit of said joint owners; that the land was to be subdivided and sold and the proceeds and profits devoted to the payment of the purchase price and expenses of the venture until O. T. Bassett was repaid the advances to be made by him, and the residue was to be divided among the parties in proportion to their interest in the land as above specified; that pursuant to this agreement plaintiffs paid toward the purchase price of their five sixteenths interest the sum of $1214 and the said O. T. Bassett advanced and loaned to plaintiffs and Roll and paid for them to the owners of the property the balance of their proportion-

ate share of the purchase price of their respective interests; that upon such payment to the owners the title to the entire property was conveyed to said O. T. Bassett in trust pursuant to the agreement of all the parties; that the land was subdivided and portions thereof sold, and the proceeds, together with the rents and profits of the residue, paid to the said O. T. Bassett until his death on January 1, 1898.

It is then alleged that on the death of said O. T. Bassett, the title to the residue of said land vested in the defendant Charles N. Bassett, his son and only heir at law; that the estate of O. T. Bassett was duly administered on and by a decree of distribution said lands were distributed to said Charles N. Bassett, who was at the date thereof a minor and whose estate was duly represented by a guardian appointed by the court until he reached his majority; that the administrator and guardian while they acted as such, and Charles N. Bassett at all times since his father's death, had actual notice of the ownership of plaintiffs of said five-sixteenths interest in said land and the proceeds thereof; that plaintiffs demanded of the administrator and the guardian and Charles N. Bassett an accounting; that the administrator and guardian promised that said C. N. Bassett would fully account for the moneys received for said lands and the lands remaining unsold when he attained his majority, and the said Charles N. Bassett during his minority also promised to do so when he became of age, but upon attaining his majority repudiated his promise and refused to account; that the administrator and guardian while they acted as such collected all the rents and profits of said land, and upon attaining his majority the said C. N. Bassett did so, and the latter had also sold certain portions of the property; that by reason of the promises of the administrator, the guardian, and the said Charles N. Bassett himself that the latter would make an accounting when he became of age, the plaintiffs had not heretofore brought an action to establish their rights in said property.

The prayer was for an accounting and decree declaring a trust in favor of plaintiffs for five-sixteenths interest in the land remaining unsold and for a conveyance thereof from said defendant C. N. Bassett to plaintiffs.

The complaint was filed February 6, 1903. It was subsequently amended, but there was no material change as to

the facts alleged in the original complaint—at least none that affect the question to be particularly considered on this appeal.

A demurrer was interposed by the defendant C. N. Bassett, both to the original complaint and the amendment thereto, under which it was insisted, among other objections to the sufficiency of these pleadings, that the cause of action alleged by plaintiffs was barred by laches on their part, and also by certain provisions of the statute of limitations.

The demurrer was overruled, as was also the demurrer of the defendant Roll, who, however, made no subsequent appearance in the action. The defendant Bassett filed an answer setting up various defenses and after trial findings were made in harmony with the allegations of the complaint, and amendment thereto. In addition the court found against the claim of laches asserted by defendant and the bar of the statute of limitations.

A decree was entered accordingly, declaring a trust in favor of plaintiffs as to the property in question; that they were the owners of an undivided five-sixteenths interest in certain portions of it which remained undisposed of, and directed a conveyance from defendant Bassett to them of such interest; there was also awarded plaintiffs on the accounting taken in the action a judgment for the sum of $9328.95.

Various grounds for a reversal are urged on this appeal, it being particularly insisted that as matter of law the court should have sustained the demurrer interposed to the complaint on the ground of laches and the bar of the statute of limitations, and that it should have found in favor of defendant in these particulars as matters of fact.

Without considering the question of laches we are satisfied that the cause of action asserted by plaintiffs was barred by the statute of limitations and that the demurrer on that ground should have been sustained.

. The theory of plaintiffs, accepted by the trial court and by the district court of appeals, was that the same rule as to the time when the statute of limitations would commence to run against plaintiffs as beneficiaries applied in the case of the trust relation which the defendant C. N. Bassett held to the property by devolution upon him of the title to it through the death of his father, as applied to the trust relationship

in which the latter held the property during his lifetime—
that the statute would only commence to run in either case
upon notice being brought home to plaintiffs of a repudiation
of the trust.

This, however, is not the rule as laid down by the decisions
in this state. The trust relations of O. T. Bassett and the de-
fendant C. N. Bassett to the trust property were entirely dis-
tinct, and the rule as to when the statute of limitations com-
mences to run is essentially different as applied to such dis-
tinct relations. The relation which O. T. Bassett bore to the
trust property was that of a voluntary trustee; that of the
defendant C. N. Bassett as to it that of an involuntary trus-
tee. As far as the elder Bassett was concerned he was a vol-
untary trustee holding title to the property under a resulting
trust; a trust which under the agreement of the parties and
as accepted by him, was to be of a continuing character, and
he was acting under it and making sales of the property in
conformity with his voluntary assumed trusteeship up to the
time of his death. Under such circumstances while the elder
Bassett was trustee and as long as he was discharging the
duties of such trustee in pursuance of the terms of his trust,
the beneficiaries would have no right of action against him
and could have none until he repudiated or disavowed the
trust relationship. This, of course, is a familiar rule.

But the relation which the defendant Charles N. Bassett
held towards this trust property upon the death of his father
was not that of a voluntary trustee but solely an involuntary
one; one which was cast upon him by operation of law—a con-
structive and implied trust—springing from the devolution
on him of the title to the trust property by the death of his
ancestor. As to him the trust was neither a voluntary nor con-
tinuing one; he owed no duty at all to the beneficiaries to do
anything in furtherance of the purposes or objects for which
the trust was created; as between him and the plaintiffs there
was no contractual relation with reference to it. Upon the
death of his father and the vesting of the legal title in him
as heir, while the property descended to him impressed with
the trust, he took it simply as a "dry, involuntary legal trus-
tee" upon whom was imposed no duty except to preserve and
protect the trust property and to account to the beneficiaries
for it and to turn over to them their share of it. As this was

the only duty cast upon the defendant Bassett as an involuntary trustee, the plaintiff's right of action to establish and enforce their claims in the trust property accrued immediately on the death of the voluntary trustee, O. T. Bassett. They were not required to make any demand upon the administrator or the guardian or upon the defendant Bassett as a prerequisite to maintaining an action for that purpose. Nor was any denial or repudiation of the trust by any of these persons necessary in order to set the statute of limitations in motion. As plaintiffs' right of action accrued on the death of the voluntary trustee, the elder Bassett, and the vesting of the title to the trust property in the defendant Bassett as an involuntary or constructive trustee, the statute then commenced to run, and unless an action was brought by the plaintiffs within four years thereafter, their right to maintain it was barred.

It is the settled rule of the authorities in this state that no repudiation of an implied or constructive trust—as an involuntary trust always is—is necessary to set the statute of limitations in operation. A cause of action in favor of the beneficiaries arises immediately that the law creates such a trust.

In *Hecht* v. *Slaney,* 72 Cal. 363, 366, [14 Pac. 88, 89], where an implied or constructive trust was involved, the rule was declared and applied. It is there said: "Whatever may once have been the rule, it is now well settled that the statute of limitations runs in favor of a defendant chargeable as a trustee of an implied trust and it is not necessary in order to set the statute in motion that he should have denied or repudiated the trust."

The same rule was equally applied in the case of *Nougues* v. *Newlands,* 118 Cal. 102, 106, [50 Pac. 386]. There it appeared that Nougues, Williams, and Ralston associated together for the purpose of purchasing and improving lands, the agreement being that Maurice Dore should take title to the lands in his own name as trustee for those parties. While holding the title to the lands conveyed to him for the other agreeing parties under this express voluntary trust, Dore conveyed it all to William Sharon who had notice of the interest of the other parties and written notice from Nougues of the terms on which Dore held the property. The court

held that Sharon on taking the deed from Dore with full knowledge of the trust became an involuntary trustee of a trust cast upon him by operation of law; that Ralston's deed to Sharon did not create Nougues and Williams beneficiaries thereunder and that on the conveyance from Dore to Sharon the statute of limitations commenced to run in favor of the latter who was grantor of defendant Newlands, and the decision to the effect that the statute of limitations commenced to operate on the acceptance of the deed from Dore by Sharon was expressly based on the proposition that thereby Sharon became an involuntary trustee of the property.

*Broder* v. *Conklin*, 121 Cal. 282, [53 Pac. 699], is to the same effect. Without particularly referring to the facts in that case, it appears that an assignee in insolvency—a voluntary trustee—transferred the property of the insolvent's estate to the defendant against whom the creditors of the insolvent debtor brought an action to have it decreed that the defendant, who was the attorney of the assignee at the time of the purchase, held the property in trust for them upon both an express and constructive trust. It is there said (quoting from the syllabus which correctly states the conclusion of the court) that "the statute of limitations does not begin to run against an express trust until a repudiation thereof is brought to the knowledge of the beneficiary, and it begins to run against the enforcement of a constructive trust from the date of its inception, and it appearing that the constructive trust established by the conveyance was created upon the purchase of the property of the insolvent debtor by the attorney for the assignee some seven years prior to the commencement of the action, its enforcement by the creditors is barred by the statute of limitations."

It is subsequently as clearly reiterated in *Baker* v. *Hurley*, 132 Cal. 21, [63 Pac. 1071, 64 Pac. 480], that, "where a trust, if it exists at all, is not created by agreement of the parties but is only implied or such as is by operation of law fixed upon the conscience of a person, the statute begins to run from the inception of the trust."

In the case at bar, so far as this defendant was concerned, if the trust exists at all as to him, it is not by reason of any agreement on his part, but because it is thrust upon him by operation of law.

CLIV Cal.—27

Under the principle of these decisions as the defendant Bassett was but an involuntary trustee—the trustee of a constructive trust—the statute of limitations commenced to run as soon as that trust relationship was created by devolution of the title of the trust property on him. No disaffirmance of the trust on his part was necessary to set the statute in motion. Nor did the recognition of the trust which it is alleged was made by the administrator of the estate of O. T. Bassett, the deceased voluntary trustee, or by the guardian of the defendant Bassett or by Bassett himself operate to change the relation of the latter to the property from that of an involuntary to that of a voluntary trustee. Neither the administrator nor guardian is vested with any authority in law to make any recognition which would have that effect. Neither did the alleged promise of the defendant while a minor to make an accounting when he attained his majority accomplish it. It is not averred that any written recognition of the trust was made by the defendant Bassett and no oral recognition of it would operate to change his relation from a constructive to an express trustee. As said in *Nougues* v. *Newlands,* 118 Cal. 107, [50 Pac. 487], to which we have heretofore called attention, "the recognition of Sharon of the rights of Nougues and Williams which is pleaded in a paragraph of the bill above quoted, could not operate in law to change the position of Sharon from that of an involuntary to that of an express trustee. To accomplish this Sharon must have declared the trust by a signed instrument in writing. (Civ. Code, sec. 852.) It is not averred that he ever did this and to the contrary the matters pleaded distinctly negative the idea that such was the fact." Neither is there any allegation of any written acknowledgment or promise made by defendant Bassett with reference to the trust or an accounting thereof such as was necessary to take the case out of the operation of the statute of limitations. (Code Civ. Proc., sec. 360.)

In support of their contention that the statute had not run in favor of the defendant Bassett because there had been no repudiation of the trust, respondents rely on the cases of *Miles* v. *Thorne,* 38 Cal. 335, [99 Am. Dec. 384]; *Roach* v. *Carrafa,* 85 Cal. 446, [25 Pac. 22]; *Watson* v. *Sutro,* 86 Cal. 529, [24 Pac. 172, 25 Pac. 64]; *Butler* v. *Hyland,* 89 Cal.

575, [26 Pac. 1108]; *Hovey* v. *Bradbury,* 112 Cal. 620, [44 Pac. 1077]; *Faylor* v. *Faylor,* 136 Cal. 92, [68 Pac. 482]; and *White* v. *Costigan,* 138 Cal. 564, [72 Pac. 178]. But in all these cases, save in *Butler* v. *Hyland* and *Hovey* v. *Bradbury,* the trusts with which the court was dealing were voluntary trusts such as was the trust as it existed while the elder Bassett was alive and held the property as trustee for the benefit of plaintiffs. The rule, as we have seen, is uniform in such cases, that before the statute of limitations will commence to run there must be a repudiation of the trust. These cases, of course, can have no application here because, as we have seen, the position of the defendant Bassett was not that of a trustee of a voluntary trust, but that of an involuntary trustee—the trustee of a trust obligation cast upon him by the law and to which the rule in the cases cited, as we have seen, has no application. The only cases cited which could have any possible application are the cases of *Butler* v. *Hyland* and *Hovey* v. *Bradbury* above referred to. It is true that in those cases the trusts sought to be enforced were involuntary trusts, but in each of those cases only two years had elapsed from the death of one of the parties to the voluntary trust which had been changed into the involuntary one which was sought to be enforced. Clearly, there, the four-year statute of limitations had not run in favor of the involuntary trustees.

In the case at bar the trust cast on the defendant Bassett was an involuntary one. The plaintiffs had a right to proceed to enforce their claim to the trust property immediately that the title to the trust property vested in the defendant Bassett as an involuntary or constructive trustee; the statute commenced to run from that date, and this action, not having been commenced until over five years thereafter was barred by the provisions of the statute requiring such actions to be commenced within four years from the time the right of action accrues.

The trial court should have sustained the demurrer to the complaint on this ground. The judgment and order are reversed and the cause remanded with directions to the trial court to set aside the judgment entered and to enter an order sustaining the demurrer of the defendant Bassett to the complaint and the amendment thereto.

Shaw, J., Angellotti, J., Henshaw, J., and Sloss, J., concurred.

Rehearing denied.