[S. F. No. 4897. In Bank.—July 3, 1909.]

## CHARLES E. SANFORD, Appellant, v. T. I. BERGIN et al., Respondents; M. R. Jones, Administrator with Will Annexed of Harriet Sanford, Deceased, Appellant.

ACTION FOR PETITION—CLAIM OF PLAINTIFF APPEALING—INTEREST UNDER RESULTING TRUST—SUPPORT OF FINDING AGAINST TRUST.— In an action for partition in which the plaintiff appealing claimed a greater interest than was awarded to him by the court, by virtue of an alleged interest in a resulting trust acquired from an uncle of plaintiff for the benefit of his deceased father and his aunts and their mother, where the court found upon sufficient evidence that the allegations of fact upon which said resulting trust was claimed to arise were untrue, the claim of such resulting trust cannot be sustained, and was properly abandoned upon plaintiff's appeal, he being confined to a claimed interest in a mortgage debt secured by deed.

ID.—MORTGAGE BY DEED—ANSWER BY ADMINISTRATOR OF DECEASED MOTHER—COMMENCEMENT OF FORECLOSURE—BAR OF ACTION.— Where the administrator of the deceased mother answered in the partition suit alleging that a deed executed by a son, owner of the property, to her was executed to secure a debt to her and another son and daughter, and sought to establish the mother's share of the mortgage debt in the partition proceedings, such answer must be considered as the commencement of an action to foreclose the mortgage, as respects the question of the bar of the mortgage debt by the statute of limitations and by laches.

ID.—MORTGAGE DEBT NOT EVIDENCED BY WRITING—DEBT CONTRACTED OUT OF STATE—LIMITATION OF TWO YEARS.—Where the mortgage debt was alleged to be due at the date of the deed, and was not evidenced by any writing and was contracted orally out of the state, it is barred within two years from the date of the deed, unless the time for action was legally extended to another date.

ID.—ABSENCE OF DEBTOR FROM STATE—BAR OF STATUTE NOT MATERIALLY AFFECTED.—Though the absence of the debtor from the state where the cause of action accrued was not part of the time

limited, yet where it arose in New York, December 11, 1875, and
the debtor mortgagor came to this state early in 1876 and remained
here until his death in 1885, and the answer setting up the mortgage
claim was not filed until April 20, 1903, the action to foreclose the
same was barred twenty years before the beginning of the action
by answer to foreclose the same, so far as respects absence from
the state.

Id.—WRITTEN ACKNOWLEDGMENT OF DEBT—DIFFERING OF EFFECTS
BEFORE AND AFTER BAR OF STATUTE.—When a written acknow-
ledgment of the mortgage debt is made before the bar of the
statute has attached to the debt, the debt is extended and the
mortgage is kept alive and continues with it.  But when the
acknowledgment, as in this case, was made after the bar of
the statute had fully attached to the mortgage debt, the mortgage
lien was extinguished by such bar of the statute, and no con-
tinuance of the debt as a new cause of action by such acknowledg-
ment can have the effect to revive, renew, or extend the mortgage
lien.

Id.—CODE PROVISIONS AS TO MORTGAGE LIEN—EXTINGUISHMENT—RE-
NEWAL AND EXTENSION.—Under section 2911 of the Civil Code, "a
lien is extinguished by the lapse of the time within which, under
the provisions of the Code of Civil Procedure, an action can be
brought upon the principal obligation"; and under section 2922
of the Civil Code, "a mortgage can be created, renewed, or ex-
tended, only by writing, executed with the formalities required in
the case of a grant of real property."

Id.—EFFECT OF SUIT TO REDEEM FROM DEED OF TRUST—CONTINUOUS
ACKNOWLEDGMENT OF MORTGAGE LIEN — BAR OF STATUTE STILL
REMAINING.—Conceding that a suit by the mortgage debtor and a
daughter to whom the mortgagee had assigned her rights to repre-
sent them by quitclaim, to redeem from a deed of trust executed
by the mortgage debtor, involves a continuous declaration by the
mortgagor of the continuance of the mortgage debt and lien in
favor of the mother as mortgagee; yet it is held that after all
rights of all parties and their legal representatives were fixed by
the final decree, a sufficient lapse of time still remained thereafter
to bar the enforcement of the mortgage lien in favor of the
appellants.

Id.—DELAY IN ADMINISTRATION ON ESTATE OF MORTGAGEE—MORTGAGE
LIEN NOT SUSPENDED.—A mortgage lien in favor of the estate of
a deceased mortgagee is not suspended by the want of administra-
tion nor by delay in the procuring of letters of administration on
the estate.

Id.—REPUDIATION OF MORTGAGE LIEN BY REPRESENTATIVE OF PLAIN-
TIFFS—KNOWLEDGE OF APPELLANT.—Where the record shows that
after the death of both plaintiffs in the redemption suit, one who
was the legal representative of each was substituted for both, and
having acquired the whole of the estate of the mortgage debtor,

embodied in the original decree, six years prior to the answer in partition, a distinct repudiation of the mortgage lien by confining the right of redemption from the deed of trust solely to the estate of the debtor, which fact was then known to the plaintiff appealing, he cannot as interested in the mortgage lien, claim that he was the victim of misplaced confidence in such representative as his aunt.

ID.—SUBSTITUTION OF EXECUTORS OF REPUDIATOR OF LIEN—FINAL DECREE FOR EXECUTORS—CONSTRUCTIVE TRUST—BAR OF STATUTE. —If the representative of both estates was an express trustee, the executors of her will which disposed of the whole property, and to whom the right .of redemption fixed by the final decree was solely confined, were merely constructive trustees, as to whose adverse rights the statute of limitations would run against both appellants as to their interests in the mortgage lien from the date of such decree. It is held that they were finally barred by the statute, and that the court properly refuses to give any relief to the administrator of the deceased mortgagee, on that ground, regardless of other considerations urged for respondents.

APPEAL from an order of the Superior Court of Contra Costa County for the partition of a tract of land, and from an order denying a new trial. William S. Wells, Judge.

The facts are stated in the opinion of the court.

Charles S. Wheeler, Donzel Stoney, M. R. Jones, E. De Los Magee, for Appellant.

The representative of both plaintiffs was merely an assignee of each for the purposes of the suit. (*Toby* v. *Oregon Pacific R. R. Co.*, 98 Cal. 490, 497, 33 Pac. 550; *Greig* v. *Riordan,* 99 Cal. 323, 33 Pac. 913; *Cobb* v. *Doggett,* 142 Cal. 142, 145, 75 Pac. 785; *Cortelyou* v. *Jones,* 132 Cal. 131, 132, 64 Pac. 119; *Iowa & California Land Co.* v. *Hoag,* 132 Cal. 627, 630, 64 Pac. 1073; *Schee* v. *La Grange,* 78 Iowa, 101, 42 N. W. 616, 617.) The filing of the partition suit stopped the running of the statute as to all actions in the suit. (*Adams* v. *Hopkins,* 144 Cal. 29, 77 Pac. 712.) The trust for the benefit of her mother which devolved upon her daughter, who represented her, devolves upon her representative. (*Elizalde* v. *Elizalde,* 137 Cal. 638, 66 Pac. 369, 70 Pac. 861; *Tyler* v. *Mayre,* 95 Cal. 160, 27 Pac. 160, 30 Pac. 197; 4 Perry on Trusts, sec. 344.) The limitation against a constructive trust is four years from its beginning. (*Hecht* v. *Slaney,* 72 Cal.

333, 14 Pac. 88; *Nougues* v. *Newlands,* 118 Cal. 282, 50 Pac. 4; *Barker* v. *Hurley,* 132 Cal. 20, 26, 63 Pac. 1071.)

T. I. Bergin, and Garret W. McEnerney, for Respondents.

The filing of the answer was the commencement of the assertion of the mortgage claim. (*Jeffers* v. *Cook,* 58 Cal. 152; *Spaulding* v. *Howard,* 121 Cal. 152, 53 Pac. 563; *Toby* v. *Allen,* 3 Kans. 399, 408.) The pendency of the suit to redeem could not suspend the running of the statute, because not specified therein. (Wood on Limitations, secs. 6, 252.) When the statute begins to run no subsequent disability of any manner or nature was effective to stop its operation. (*McLeran* v. *Benton,* 73 Cal. 329, 344, 14 Pac. 879; *Alvarado* v. *Nordholt,* 95 Cal. 127, 30 Pac. 211; *Davis* v. *Hart,* 123 Cal. 388, 55 Pac. 1060; *Williams* v. *Long,* 130 Cal. 59, 80 Am. St. Rep. 68, 62 Pac. 269; *Estate of Turner,* 128 Cal. 393, 60 Pac. 976; *DeKay* v *Darrah,* 14 N. J. L. 288; Wood on Limitations, sec. 252.) The bar of the statute cannot be postponed by the failure of the creditor to avail himself of any means within his power to present his claims. (*Pearsall* v. *Smith,* 149 U. S. 231, 13 Sup. Ct. 833; *Campbell* v. *Haverhill,* 155 U. S. 616, 617, 15 Sup. Ct. 217; *Tynan* v. *Walker,* 35 Cal. 638, 95 Am. Dec. 152.) Equity will hold equitable claims barred by laches, independently of the statute. (*Abraham* v. *Ordway,* 158 U. S. 416-420, 15 Sup. Ct. 894; *Hanner* v. *Moulton,* 138 U. S. 495, 11 Sup. Ct. 408; *Philippi* v. *Philippi,* 115 U. S. 157, 5 Sup. Ct. 1181; *Penn. Mut. Ins. Co.* v. *Austin,* 168 U. S. 698, 18 Sup. Ct. 223; *Simpson* v. *Dalziell,* 135 Cal. 662, 67 Pac 1080; *Nicholson* v. *Tarpey,* 124 Cal. 450, 57 Pac. 457.) The two years statute of limitations is applicable when there is no written debt. (*San Jose Bank* v. *Bank of Madera,* 144 Cal. 576, 78 Pac. 5.) No allegation as between co-plaintiffs can constitute a written acknowledgment in a complaint addressed only to the defendants. Nothing was said or done to make such declaration an estoppel *in pais;* nor make the complaint such a writing signed by the party to be charged as is required in section 360 of the Code of Civil Procedure. An unqualified acknowledgment addressed to third parties will not take the case out of the statute. (*Biddel* v. *Brizzolara,* 64 Cal. 355, 30 Pac. 609, and cases cited; *Roscoe* v.

*Hale,* 7 Gray, 274; *Fort Scott* v. *Hickman,* 112 U. S. 150, 161, 5 Sup. Ct. 56; *Holberg* v. *Jaffray,* 65 Miss. 526, 5 South. 94.) The barred mortgage could not be renewed by any written acknowledgment of the debt. (Civ. Code, secs. 2911, 2922; *Weinberger* v. *Weidman,* 134 Cal. 599, 66 Pac. 869, and cases cited.) Neither the complaint in the action to redeem nor the deposition could constitute a new mortgage under section 2922 of the Civil Code. The statute will run against any cause of action supposed to exist in favor of an estate, where there is neglect to secure administration. (*Bauserman* v. *Blunt,* 147 U. S. 647, 658, 659, 13 Sup. Ct. 466.)

SHAW, J.—This is an action for the partition of a tract of land containing 13,316 acres, known as the Rancho los Meganos in Contra Costa County. An interlocutory order declaring the interests of the several parties and directing partition accordingly was made by the court below. The plaintiff, Charles E. Sanford, and the defendant, M. R. Jones, as administrator with the will annexed, of the estate of Harriet Sanford, deceased, moved the court for a new trial, which was denied. They appeal from the order for the partition and from the order denying a new trial.

1. The plaintiff was adjudged to be the owner of an undivided five and five-sixteenths hundredths of the land. In his complaint plaintiff alleged title to an undivided one half thereof. This claim was based upon an alleged resulting trust in the land whereby it was claimed that James T. Sanford, uncle of the plaintiff, in 1871 acquired the title to the land in trust for his mother, brother, and sisters, the plaintiff being the sole and only heir of the brother, the trust arising from the alleged fact that the purchase money belonged to the beneficiaries above mentioned. The court found that the allegations of fact upon which it is claimed that the trust arose were untrue. It is conceded that this finding is supported by sufficient evidence. The claim to an interest in the land by virtue of such resulting trust is now abandoned.

2. The claim of Jones as administrator of the estate of Harriet Sanford, deceased, is that Harriet Sanford held a mortgage upon the land to secure a debt amounting to at least three hundred thousand dollars, and he asks that said mortgage be declared a lien thereon and that its payment be

provided for in the partition proceedings. He asserts that on December 11, 1875, James T. Sanford was the owner of the land, that on that day he executed to Harriet Sanford, who was his mother, a deed purporting to convey the land to her in fee simple for an expressed consideration of $172,500, but that, in fact, said deed was intended as a mortgage to secure a debt then due from James T. Sanford to Harriet Sanford and "the family," that is, his brother, Charles B. Sanford, and his sisters, Harriet A., and Josephine L. Sanford. It was alleged that this debt aggregated more than three hundred thousand dollars, but the mortgage lien asserted in this partition proceeding consists only of the amount thereof alleged to be due to Harriet Sanford. The court found that the deed to Harriet Sanford was absolute and that no debt or mortgage from James T. to Harriet Sanford was proven, but that, if any such debt and mortgage did, at any time, exist, they were barred and extinguished by the statute of limitations and by laches, long before the commencement of the action. The action was begun on April 30, 1898. The answer of Jones, in which, for the first time, the mortgage claim was asserted, was filed on April 20, 1903. The filing of this answer must be deemed to be equivalent to an action of foreclosure, and the question of the bar of the statute of limitations or of laches must be decided upon the theory that the action was begun upon the date last mentioned.

The debt, if any, which was secured by the alleged mortgage, was not evidenced by any bond or note, nor, as far as appears, by any instrument in writing whatever. The evidence shows that if such debt ever existed it arose in the state of New York while the parties resided in that state, and that if any writing was given in evidence thereof such writing was executed in that state. The deed of December 11, 1875, claimed to constitute a mortgage, and which is the foundation of the asserted right of Jones as administrator of Harriet Sanford's estate, was executed in New York. "An action upon a contract, obligation, or liability, not founded upon an instrument of writing, or founded upon an instrument of writing executed out of the state," is barred unless such action is begun within two years after the cause of action shall have accrued. (Code Civ. Proc., secs. 312, 339.) There is an exception in the case of a defendant who is out of the

state. in which case the time of his absence is not a part of
the time limited for the beginning of the action. But here
the alleged debtor and mortgagor came to this state early in
1876 and remained here until his death on May 2, 1885. It
is alleged in the answer that the debt which the deed of
December 11, 1875, was intended to secure, was due at the
time of the execution of that deed. Hence it follows that,
unless something occurred to prevent the operation of the
statute, or to revive or renew the debt or mortgage, any action
thereon was barred on December 11, 1877, twenty-five years
before the filing of the answer which we. hold to be the
beginning of such action. (*San Jose etc. Bank* v. *Bank,* 144
Cal. 574, [78 Pac. 5].)

It is claimed that the following facts are proven by the
evidence without conflict and that they show that the action
is not barred:

On October 12, 1881, Harriet Sanford, at the request of
James T. Sanford, executed a quitclaim deed purporting to
convey the land to her daughter, Harriet A. Sanford. This
deed was intended and accepted as an assignment of the
mortgage interest and rights claimed to have been created by
the deed of December 11, 1875, from James T. Sanford to
his mother. Before the execution of this deed the Savings
and Loan Society of San Francisco, a corporation, and other
persons holding as trustees for said corporation, had received
deeds and conveyances of the land in trust to secure a debt
due said Society from James T. Sanford, but the Society
wrongfully claimed absolute title thereunder in trust for its
benefit and that James T. Sanford had no right or interest
in the land. The Society was in possession. On May 1, 1882,
James T. Sanford and Harriet A. Sanford began an action
in the United States circuit court against said Society for an
accounting and to redeem the said land. Harriet A. Sanford
and James T. Sanford both signed the complaint in said ac-
tion. Therein they averred that the indebtedness of James
to his mother on December 11, 1875, was more than $172,500,
that the deed of that date, executed to Harriet Sanford by
James T. Sanford, was given as security for said indebtedness
then due, that the quitclaim deed of October 12, 1881, by
the mother to Harriet A. Sanford, assigned and transferred
to Harriet A. Sanford all the rights and interests of. the

CLVI Cal.—4

mother acquired by the deed aforesaid to her from James T. Sanford, and they prayed that the Savings and Loan Society, upon payment to it of the amount found due to it from James T. Sanford, be required to convey or cause to be conveyed the said rancho to Harriet A. Sanford. On April, 1884, James T. Sanford gave and signed his deposition as a witness in said action. Therein he testified that the said deed by his mother to his sister Harriet A. Sanford was made for the reason that his mother was too ill to commence or carry on the action against the Savings and Loan Society, which was then in contemplation, that the reason that the conveyance was not made to himself was that he did not wish to disturb the security that that deed carried with it and that the deed to his sister was made without any other consideration. It is claimed that the complaint and deposition in said action constitute written acknowledgments of the existence of the debt and mortgage to Harriet Sanford, taking the same out of the operation of the statute of limitations. Harriet Sanford died on October 11, 1883. Her will was probated in New York on December 26, 1886, and Harriet A. Sanford was appointed executrix thereof. James T. Sanford died on May 3, 1885. His will was probated in New York and Harriet A. Sanford was there appointed executrix thereof. By Harriet Sanford's will a legacy of one hundred and fifty thousand dollars was given to her daughter Josephine L. Sanford, some small legacies were bequeathed to others and the residue equally to the four children, Charles B. Sanford, Harriet A. Sanford, James T. Sanford, and Josephine L. Sanford. Charles B. Sanford died on January 29, 1896. The plaintiff is his son and only heir. Harriet A. Sanford died testate on January 12, 1888. Her will gave all her property to her sister Josephine L. Sanford. On February 13, 1888, said will was admitted to probate and said Josephine was appointed administratrix of her said estate, and on October 6, 1890, the said estate, including all the interest of Harriet A. in the lands in controversy here, was finally distributed to said Josephine. On May 21, 1887, Josephine was appointed administratrix of the estate of James T. Sanford. His will gave all his property to his said sisters Harriet and Josephine. On May 12, 1888, his estate was distributed to Josephine, one half in her own right and one half as suc-

cessor to her sister Harriet A. Josephine then represented all the interests concerned in the prosecution of the action in the United States circuit court. In her dual capacity as the representative of the respective estates of her brother and sister as aforesaid, she obtained a revival of said action against the Savings and Loan Society and others and on December 31, 1889, was duly substituted as plaintiff therein. Thereafter until her death on September 12, 1897, the prosecution of said action was continued by her, individually, and as administratrix of the respective estates of James T. and Harriet A. Sanford. Final judgment in the action to redeem was rendered on February 27, 1897, and the action was appealed to the circuit court of appeals. On May 1, 1900, the administrators of the estate of Josephine were substituted in her stead as plaintiffs in said action and on the same day the appeal was determined in their favor and the judgment became final.

The first written acknowledgment of the debt and mortgage by James T. Sanford was the aforesaid complaint filed by him on May 1, 1882, more than six years after the mortgage was made. As the alleged mortgage secured a debt which said complaint declared was due at its date, it follows that the debt was barred three times over when the acknowledgment was made. At that time, therefore, the mortgage had already become extinguished by the lapse of time within which an action could be commenced upon the debt which it secured. (Civ. Code, sec. 2911; *San Jose etc. Bank* v. *Bank,* 144 Cal. 574, [78 Pac. 5] ; *Wells* v. *Harter,* 56 Cal. 343; *Jeffers* v. *Cook,* 58 Cal. 152; *Henderson* v. *Grammar,* 66 Cal. 336, [5 Pac. 488] ; *Ward* v. *Waterman,* 85 Cal. 505, [24 Pac. 930] ; *Hughes* v. *Cannedy,* 92 Cal. 387, [28 Pac. 573] ; *Newhall* v. *Sherman,* 124 Cal. 512, [57 Pac. 387].) When a written acknowledgment of a debt is made after the statute of limitations has begun to run, but before the statutory period has expired, the effect is to keep the original obligation alive, and a suit may be maintained on the original contract, after the expiration of the original period and within the new period initiated by such acknowledgment. (*Rogers* v. *Byers,* 127 Cal. 528, [60 Pac. 42], and cases there cited.) But if the new promise or acknowledgment is not made until after the debt has become barred, the original contract is practically extinguished, and the suit can only be maintained upon

the new express promise, or upon the new promise which the law implies from an acknowledgment in writing. (*Rogers* v. *Byers*, 127 Cal. 528, [60 Pac. 42]; *Concannon* v. *Smith*, 134 Cal. 17, [66 Pac. 40]; *Southern Pacific Co.* v. *Prosser*, 122 Cal. 417, [52 Pac. 836, 55 Pac. 145].) The effect of the application of these rules to a debt secured by a mortgage is that where the acknowledgment is made before the action is barred, the original contract being thereby kept alive, the mortgage is not extinguished by the lapse of the period of limitation after the cause of action first accrued. The original contract not having been barred at the time of such acknowledgment, it is extended and the mortgage lien continues with it. (*Daniels* v. *Johnson*, 129 Cal. 417, [79 Am. St. Rep. 123, 61 Pac. 1107].) But when the new promise or acknowledgment occurs after the debt is barred and the mortgage lien extinguished, the new promise, express or implied, becomes the basis of the cause of action, and it does not revive or renew the mortgage lien. (*Wells* v. *Harter*, 56 Cal. 343; *Southern Pacific Co.* v. *Prosser*, 122 Cal. 417, [52 Pac. 836, 55 Pac. 145].) "A mortgage can be treated, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property." (Civ. Code, sec. 2922.) Neither the complaint nor the deposition can be construed to be a renewal or revival of the mortgage lien. Undoubtedly, if the case of the administrator of Harriet Sanford depended upon this question, the action would have long ago become barred.

In avoidance of this conclusion, the appellants contend that the complaint in the redemption suit was more than a mere acknowledgment. They say that it was an assertion by James T. Sanford that on May 1, 1882, when the complaint was filed, the said mortgage was then a subsisting, valid lien on the property to secure the existing debt, and that the debt was not then barred, nor the mortgage lien extinguished: that this assertion necessarily implies that there had been successive renewals or acknowledgments of the debt, from time to time within the period of limitation, whereby both the debt and the mortgage had been kept in existence as continuing obligations until that date, and that this averment in the complaint is the equivalent of proof of the renewals necessary to accomplish that end. It will here be observed

that, even if this is taken as correct, and the giving of the
deposition in 1884 be deemed a new acknowledgment of the
debt within the new period of limitation beginning on May 1,
1882, in which event the debt and mortgage would be kept
alive until April, 1886, there would still remain a period of
seventeen years between April, 1886, and April, 1903, when
the present proceeding is deemed to have been commenced,
by which period the action would be barred. To surmount
this obstacle, in part at least, the appellants advance another
proposition, which we will now state.

It is said that the filing of that complaint to redeem from
the prior mortgage, the mortgagor and second mortgagee
joining therein, with a prayer that the second mortgage be
protected by the decree, was a continuing declaration by the
mortgagee and his successors in the suit, repeated in effect
every day during the pendency of the action until the final
judgment therein, that the second mortgage was a valid and
subsisting lien to secure the payment of the debt for which
it was given, and that this prevented the running of the
statute of limitations during the pendency of that action. It
is also claimed in the same connection, that so long as the
mortgagor and his successors were engaged with the mort-
gagee and her successors in prosecuting the action to redeem
the prior mortgage, for the purpose, among others, avowed
in the complaint therein, of protecting and preserving the
estate so that the lien of the said second mortgage might be
effectual thereon, such mortgagor and his successors are estop-
ped, so far as the beneficiaries under the second mortgage are
concerned, to assert that the statute of limitations had been
running in their favor or that by that means the mortgage
lien had been extinguished.

It may be conceded that there is some force in these three
propositions respecting the effect of the complaint and deposi-
tions and the joinder in the prosecution of such action. We
are not disposed to enter upon a discussion of the questions
presented thereby, but will, for the purposes of the case,
concede all that the appellants claim in respect thereof. We
are of the opinion, notwithstanding these propositions, that
the action to foreclose the mortgage is barred.

Final judgment of the essential fact in dispute in the
action to redeem, the right of the said plaintiffs to redeem at

all, was given by the United States circuit court on November 16, 1893, after a trial upon the merits. This judgment declared that the Savings and Loan Society, through George Mearns, its trustee, held the land and the title thereto in trust, as security for the payment of a debt due to it from James T. Sanford, and that upon payment of such debt the complainants, "as the personal representatives and successors in interest of James T. Sanford," were entitled to have executed to them a conveyance of all the estate, right, title, and interest in the land had and held by the said Society and its trustees in the said land. An accounting was necessary and a referee was appointed to take the account. He made his report stating the account up to February 25, 1897, and on that date the court gave final judgment of redemption and for a conveyance to said complainants, upon payment of the debt. Josephine L. Sanford was the sole complainant at the time the aforesaid interlocutory and final judgments were rendered, she having been regularly substituted for James T. Sanford and Harriet A. Sanford, respectively, as administratrix of their respective estates. Redemption was to be made within six months, or, if an appeal was taken, within six months from the time the judgment should become final on such appeal. In default of any redemption, the complainants' bill was to thereupon stand dismissed. This judgment was affirmed on appeal. The executors of the estate of Josephine L. Sanford were substituted for her as complainants, and by stipulation of both parties to the suit, a supplemental decree was made therein on May 1, 1900, bringing the account down to that date, declaring that one hundred and ninety-five thousand dollars had been agreed to as the sum due to the Savings and Loan Society and that upon payment thereof within six months thereafter, the said Society should execute or cause to be executed to the "complainants, their successors, assigns or appointees, the conveyance provided for in, and directed to be executed by, said final decree," referring to the decree of February 25, 1897. No redemption having been made within the six months allowed therefor, the complainants' bill, by the terms of the decree itself, stood dismissed on November 1, 1900. A formal order dismissing the bill was made on May 13, 1901. It further appears in the evidence that the plaintiff caused Jones to obtain letters of adminstration upon

the estate of Harriet A. Sanford in Contra Costa County on
April 6, 1903, nearly twenty years after her death, that
the answer of Jones as administrator was filed and prosecuted
at the instance of the plaintiff in this action, that as early
as 1897, he had employed attorneys to prosecute such rights
as he had under the asserted mortgage to Harriet Sanford,
that he and his attorneys were at that time informed of all
the facts tending to establish those rights, and that no dis-
closure of his claim to any such rights was made to the ad-
verse parties prior to the filing of the answer of Jones on
April 20, 1903.

The final decree of May 1, 1900, fully settled the rights
of all the parties, and then, if not before, there was an end
to those relations between them which, it is claimed, suspended
the operation of the statute of limitations and estopped James
T. Sanford and his successors from invoking it. Nothing then
remained to be done, except to pay the debt declared to be due
to the Savings and Loan Society. James T. Sanford and
his successors had, by that decree, which was final, obtained
all the relief that was possible in that action. Thencefor-
ward his successors and representatives were not asking any
relief on behalf of the successors of Harriet Sanford or
Harriet A. Sanford, as mortgagees, nor were they construc-
tively repeating any written declaration in the complaint that
the deed of December 11, 1875, was in effect a mortgage. If
the beneficiaries under that instrument had any rights there-
under at that time, such rights had then accrued and matured
and were at once enforceable by foreclosure suit against the
interests of the successors of James T. Sanford, and there
was nothing in the relations between them which should have
prevented such foreclosure, if it were necessary in order to
keep the mortgage alive. Charles E. Sanford had then full
knowledge of all the facts upon which the claim that such
mortgage existed was based. He was at liberty to procure
letters of administration upon his grandmother's estate and
begin such action without delay. The want of an administra-
tion upon an estate does not suspend the statute of limita-
tions upon a mortgage in favor of such estate. (*Grattan* v.
*Wiggins*, 23 Cal. 28; *Tynan* v. *Walker*, 35 Cal. 634, [95 Am.
Dec. 152]; *Hibernia etc. Soc.* v. *Conlin*, 67 Cal. 178, [7 Pac.
477].) Conceding, therefore, that the statute was suspended

while the action was pending, it again began to run either on May 1, 1900, the date of said decree, or on November 1, 1900, the date when the period of redemption expired. In either case the present action to foreclose was barred.

Furthermore, the record shows that there was, prior to that decree, an abandonment and repudiation by Josephine L. Sanford of the original plan to have the Harriet Sanford mortgage of 1875 kept alive, and that this was known to Charles E. Sanford and his attorneys; so that it cannot be said that they were relying on the good faith of Josephine L. Sanford or her successors. The decree of 1893 in the redemption suit declared the right of redemption, which was the vital question, but it did not follow the prayer of the complaint by providing for a conveyance of the land to the successors of Harriet Sanford, the alleged mortgagee, or of Harriet A. Sanford, the alleged successor and trustee of Harriet Sanford. Josephine L. Sanford, then the sole complainant, was the administratrix of the respective estates of the two original complainants, and thus represented both interests. But instead of procuring a decree providing for a conveyance to her as representative of Harriet A. Sanford's interest, she obtained a decree declaring that upon redemption a conveyance should be made to her as the personal representative and successor in interest of James T. Sanford. Here was a distinct repudiation of the claim that the old mortgage of December 11, 1875, then remained a subsisting lien or right. Neither the final decree of 1897, nor that of 1900, specified or stated the capacity in which the complainant was to receive such conveyance. They merely followed the original decree of 1893 and did not purport to change or modify it in that particular. Josephine L. Sanford executed her last will on May 3, 1897, in which she disposed of the Rancho los Megaños in terms showing an intent to dispose of the entire estate in fee simple and inconsistent with any other intention. She was not on friendly terms with Charles E. Sanford, as he well knew. She did not mention nor dispose of any interest in the estate of her mother, but treated the entire estate as her own and as composed of said land and certain goods and chattels. This will was filed for probate on September 20, 1897. Charles E. Sanford filed a contest thereof, but it was admitted to probate on September 14, 1898. The inventory of her estate

was filed by her executors on April 6, 1900. It stated that
the estate consisted of the said rancho, subject to the Savings
and Loan Society mortgage, and various articles of personal
property, making no mention at all of any legacy due from
her mother's estate, or any lien in the mother's favor on the
rancho. It thus appears that from and after 1893 she was act-
ing in open hostility to plaintiff's claims, whether under a re-
sulting trust or as one of the residuary legatees under Harriet
Sanford's will. ·This evidence of repudiation of the former re-
lations which may have been supposed to have existed between
Josephine L. Sanford and the plaintiff was sufficient to justify
the court in concluding that the plaintiff had not been the
victim of any misplaced confidence in his aunt. In addition,
it is to be noticed that on May 1, 1900, the executors of
Josephine were substituted as complainants in the redemp-
tion suit, and it was therein decreed that upon redemption
the conveyance from the trustee of the Savings and Loan
Society was to be made to said executors as complainants.
Upon the death of Josephine the administration of the two
estates of James T. Sanford and Harriet A. Sanford lapsed.
No successor was appointed in either estate. The executors of
Josephine L. Sanford did not succeed to her duties or powers
as administratrix of the estates of her deceased brother and
sister. If she were trustee of an express trust, they became
trustees of a constructive trust. They did not represent
those estates when they were substituted as complainants in
the suit to redeem, but they then represented the interests
of Josephine L. Sanford alone. (*Norton* v. *Bassett,* 154 Cal.
411, [97 Pac. 894].) A conveyance to them as such executors
would be a conveyance, on its face enuring to the benefit
of the estate of Josephine, and not for the benefit of the plain-
tiff. It would be antagonistic to him. In view of all these
considerations it is very clear that the statute of limitations
immediately began to run in favor of her estate against any
claim of the plaintiff, or of the successors or representatives
of Harriet Sanford, based upon any mortgage then claimed
to exist upon the interest of James T. Sanford then vested in·
the successors of Josephine. The court below properly re-
fused to give any relief to the administrator of the estate of
Harriet Sanford.

The respondents earnestly contend that the parol express trust in favor of Harriet Sanford, upon which it is claimed Harriet A. Sanford and Josephine, as her successor, held the mortgage herein sought to be enforced, was not established by satisfactory or sufficient evidence, and that, consequently, the transfer thereof to Harriet A. Sanford was absolute, that the estate of the mother had no interest therein and that it vested wholly in Josephine, under her sister's will. They also contend that upon the failure to redeem on November 1, 1900, the title to the land became absolute in the Savings and Loan Society and its trustees, free from all claim on the part of the plaintiff or Jones as administrator, that the title of the respondents is derived by subsequent deeds from said trustees, and that by these transactions all right to or lien upon the land in favor of the plaintiff or Jones have been cut off. In view of the conclusions we have reached in regard to the statute of limitations, we find it unnecessary to consider these questions.

The judgment and order are affirmed.

Sloss, J., Henshaw, J., Angellotti, J., and Melvin, J., concurred.

Rehearing denied.