Lydia Barrs Browder, as Executrix of the Last Will and Testament of J. M. Barrs, Deceased, *Plaintiff in Error*, v. A. J. DaCosta, as Administrator *de bonis non* of the Estate of Chas. W. DaCosta, Deceased, *Defendant in Error.*

En Banc.

Opinion Filed June 22, 1925.

*John T. G. Crawford,* for Plaintiff in Error;

*Cromwell Gibbons,* for Defendant in Error.

PER CURIAM.—1. When an objection is sustained to a question, and the witness is not permitted to answer, unless it plainly appears from the question propounded that the answer of the witness would be relevant to the issues, it is the duty of the party propounding the question to make a sufficient proffer of what he intends to prove by the witness in answer to the objectionable question, so that the Court below, and subsequently this Court, can determine whether or not the proposed evidence would be material.

*John T. G. Crawford,* for Plaintiff in Error;

*Cromwell Gibbons,* for Defendant in Error.

TERRELL, J.—In December, 1903, C. W. DaCosta entered into contract with R. J. Riles for the sale and purchase on the part of Riles of certain property in Duval County. J. M. Barrs represented DaCosta in the transaction. The sale was consummated and Riles paid Barrs as attorney for DaCosta cash and notes aggregating $19,189.54, after making certain disbursements as shown by statement made by Barrs to DaCosta January 27, 1904.

C. W. DaCosta died September 15, 1911, and W. W. Frazier was appointed his administrator. October 4, 1912, Frazier as administrator made demand on Barrs for the balance due the estate of DaCosta as shown by Barrs' statement, and suit was brought June 26, 1913. The declaration was filed August 4, 1913, and is in three common counts for money loaned, money received and accounts stated.

Barrs pleaded the general issue, the 2, 3, 4 and 5-year statute of limitations and payment to all counts. Demurrer to the two-year plea of statute of limitations was sustained and issue was joined on the pleas of general issue and payment February 2, 1914. In October, 1916, plaintiff filed replications to the pleas of the 3, 4 and 5-year statute of limitations. Demurrer to all these replications was overruled except as to the 3, 4 and 5-year pleas to the first count. In November, 1917, defendant filed his rejoinder denying the existence of the relation of attorney and client as charged, that he held any funds of DaCosta as trustee and that he was ever the attorney in fact for said DaCosta.

In November, 1919, Barrs' death was suggested and his

executrix plaintiff in error was impleaded. Subsequent to the death of Barrs, the original plaintiff died and the present plaintiff as administrator *de bonis non* was substituted. Charles S. Adams, the original referee, also died, and John E. Hartridge was appointed, who, after hearing the evidence and argument of counsel, entered judgment for plaintiff in the sum of $47,916.60 as damages, the amount of principal and interest to date of finding, and $42.43 costs. Writ of error is taken to this judgment.

The main question brought here for our determination is whether or not the statute of limitation run against the claim of a client upon his attorney for money collected by such attorney in behalf of said client.

Plaintiff in error argues the affirmative of this question. The rule seems well settled that in current transactions where a client sends his attorney claims and other obligations to realize on and collections are made by the attorney and remittances are withheld beyond the statutory period, the statute of limitations will run against them. There is a wide difference of opinion as to when the statute begins to run in such cases. Some hold that where there has been no fraudulent concealment of its receipts the statute attaches at the time of collections while others hold that it runs from the time knowledge of the receipt of the money by the attorney is brought home to the client, and still others hold that there is no right of action against an attorney for money collected and the statute does not begin to run until demand or refusal to pay has been made.

These latter cases are grounded on the theory that an attorney's liability rests on the principle of agency for his client and that it would be in opposition to the nature of the trust imposed by his agency to hold him liable in an action for money collected by him until after refusal on his part to pay it over. 17 R. C. L. 768; Douglas v. Corry,

46 Ohio St., 349, 21 N. E. Rep. 440, 15 Am. St. Rep. 604 and Note; Rhines v. Evans, 66 Pa. St. 192; Goodyear Metallic Rubber Co. v. Baker's Estate, 81 Vt. 39, 69 Atl. Rep. 160, 17 L. R. A. (N. S.) 667 and Note; Ott v. Hood, 152 Wis. 97, 139 N. W. Rep. 762, 44 L. R. A. (N. S.) 524, and Note.

In Goodyear Metallic Rubber Co. v. Baker's Estate, 81 Vt. 39, 69 Atl. Rep. 160, 17 L. R. A. (N. S.) 667, 15 Ann. Cas. 1207, Note 1208, the prevailing rule is stated as follows: The rule adopted by the greatest number of jurisdictions is that, in the absence of misrepresentation or fraudulent concealment on the part of the attorney, the statute of limitations begins to run against an action by a client to recover money collected by his attorney from the time the collection is made or from the expiration of a reasonable time after the attorney receives the money. 17 R. C. L. 768. (See also a complete list of cases cited in Note Goodyear Metallic Rubber Co. v. Baker's Estate, 15 Ann. Cas. 1207, 17 L. R. A. (N. S.) 667, and Ott v. Hood, 44 L. R. A. (N. S.) 524, *supra*.)

It seems to us that the circumstances of this case lift it out of the rule applicable to the attorney in whose hands an ordinary account is placed for collection. C. W. DaCosta and Mr. Barrs had long prior to the transaction involved been intimate friends. At the time of the transaction they were living in the same apartment and Barrs, representing DaCosta, negotiated the sale by DaCosta to Riles. The entire proceeds of the sale were paid by Riles to Barrs as attorney for DaCosta, and after making certain disbursements Barrs rendered a full statement to DaCosta showing the balance due, or net proceeds. DaCosta left immediately for Tennessee for his health, where he remained two or three years, when he returned to Jacksonville and took up his residence in close proximity to Barrs.

They (DaCosta and Barrs) continued to be warm friends and constant companions up to the time of DaCosta's death in 1911. It does not appear that DeCosta ever made demand on Barrs for the net proceeds of the sale to Riles, but it does appear that throughout all these years Barrs was the attorney and close personal friend and confidant of DaCosta.

This statement of facts seems to be sufficient to constitute Barrs the agent or voluntary trustee of DaCosta. That is to say, the obligation of Barrs to DaCosta was one arising out of personal confidence reposed in and voluntarily accepted by him (Barrs). There is no showing that the trust reposed in Barrs has been repudiated by him and until this is done the statute of limitations must remain inoperative in all those jurisdictions where it is otherwise effective. 17 R. C. L. 794, 958; Norton v. Bassett, 154 Cal. 411, 97 Pac. Rep. 894, 129 Am. St. Rep. 162; Story's Equity Juris. §§ 310, 311. In our State under the holding here announced Section 2927, Revised General Statutes of Florida, 1920, makes the statute of limitations inapplicable.

The judgment of the court below is therefore affirmed.

WEST, C. J., AND WHITFIELD AND STRUM, J. J., concur.

PER CURIAM.—On petition for rehearing, plaintiff in error, defendant below, points out that the evidence of indebtedness on which plaintiff below recovered judgment, consisted largely of a letter dated January 27, 1904, which purported to be a statement of account, written by the original defendant below, J. M. Barrs, a practicing attorney, to plaintiff's intestate, C. W. DaCosta, a client and friend of Barrs, in which Barrs acknowledged having received for the account of DaCosta cash and notes aggregating $19,253.18. Judgment was rendered for this sum,

with interest from the date of the statement. The statement referred to was rendered about seven years and eight months before the death of plaintiff's intestate C. W. DaCosta, during which time it appears that Barrs and DaCosta remained close friends and associates. This suit was begun about nine years and five months after the date of the letter, and nearly two years after the death of DaCosta. Based upon this situation, plaintiff in error, by petition for rehearing, asserts that if the evidence in this case be sufficient to sustain the judgment rendered long after the death of both Barrs, the original defendant, and his client, DaCosta, the addressee of the statement and the creditor therein named, then the estate of no deceased lawyer would be safe against unjust suits based on old statements of indebtedness that were correct when made by the lawyer, but the indebtedness subsequently discharged, where the deceased lawyer's represntative or heirs are unable to produce positive record proof of such payment when it is questioned long after the lawyer's death.

Whatever may be the force of this contention from an academic viewpoint, it does not appear to be applicable to the case at bar.

This case was commenced more than six years prior to the death of the original defendant, J. M. Barrs. The period of time last mentioned, and more, was consumed in an extended and somewhat dilatory contest over the pleadings. The suit was not tried after Barrs' death.

Although it may be primarily the duty of the plaintiff to bring his suit to issue and to trial, the defendant, if he wishes to do so, may always speed the cause to trial within a reasonable time—certainly in a cause of this nature, in much less than six years. After the cause was at issue, and after the death of the defendant, it was more than two years before the case was brought on for trial before the

Referee. Thus it will be seen that the cause was fully pending from June, 1913, to the death of the defendant, more than six years later, and for approximately two and one-half years thereafter before the testimony was taken.

Of course, the length of time elapsing between the commencement of an action and the trial thereof does not affect the measure of proof required of the plaintiff to establish his claim. Those circumstances, however, afford some degree of aid in considering the probability of an unjust judgment having been rendered, as is inferred by the petition for rehearing, because of the death of the original defendant and the consequent inability of his executrix to prove the fact of payment as asserted by the defendant in his plea.

In view of the progress of this suit as shown by the record, we are not convinced that it presents an instance where an unjust judgment may have been rendered because of the unfortunate interposition of the hand of death. From the bringing of the suit to the death of the original defendant, more than six years elapsed, ample time, it seems to us, for the defendant during his lifetime to have compelled a settlement of the pleadings and insisted upon a trial so that he might refute the plaintiff's claim, if such claim was unfounded or a good defense existed.

Although the evidence presented by the plaintiff is perhaps somewhat meager, it was enough to make out a *prima facie* case at the trial, and it is not so deficient in law as to require a reversal under all the circumstances. Under the pleadings, when the plaintiff below had made out a *prima facie* case, the burden shifted to the defendant to prove his pleas of payment and the statute of limitations.

In the petition for rehearing plaintiff in error also renews the contention made in the original assignments of error that the Referee erred in refusing to permit the wit-

ness, P. H. Odom, to testify to certain conversations between himself and Mr. C. W. DaCosta, which occurred during the latter's lifetime. Although it may sufficiently appear that Mr. Odom was not an interested party, so as to place him beyond the inhibition of Sec. 2705, Rev. Gen. Stat. 1920, it does not sufficiently appear from the question propounded to this witness that his reply thereto would be relevant to the issue. When an objection is sustained to a question, and the witness is not permitted to answer, unless it plainly appears from the question propounded that the answer of the witness would be relevant, it is the duty of the party propounding the question to make a sufficient proffer of what he intends to prove by the witness in answer to the objectionable question, so that the court below, and subsequently this court, can determine whether or not the proposed evidence would be material. Otherwise, the error is not made to appear. Boykin v. State, 40 Fla. 484; 24 South. Rep. 141; Morey v. State, 72 Fla. 45; 72 South. Rep. 490. One of the questions to which objection was sustained was: ''Did Mr. DaCosta *ever* state to you that Mr. Barrs was indebted to him or was not indebted to him?'' The other questions to which objections were sustained were of similar import. For one thing, these questions are lacking in definiteness as to the time of the supposed statement to the witness. If the defendant intended to follow up these questions with other testimony which would show the relevancy of the answer to the objectionable question, then a proffer of such additional testimony should have been made, or the original question amended so that the question itself would indicate the relevancy of the answer. No proffer was made by the defendant, however, as to what was intended to be elicited from the witness P. H. Odom in answer to the question objected to, and it does not sufficiently appear from the question itself, or from other evi-

dence already admitted, that the answer thereto would be relevant.

With respect to the proffered testimony to be given by the witness Miss Alice Hunt, the proffer does not show that this witness was a disinterested party, as is expressly required by Sec. 2705, Rev. Gen. Stat. 1920, in order to take the testimony out of the inhibition of the statute.

Rehearing denied.

BROWN, C. J., AND WHITFIELD, ELLIS, TERRELL, STRUM AND BUFORD, J. J., concur.