[No. 13162.   Department One. — June 25, 1891.]

# SARAH T. BUTLER, APPELLANT, v. JAMES HYLAND ET AL., RESPONDENTS.

NONSUIT — EFFECT OF MOTION. — A motion for a nonsuit admits the truth of the testimony introduced, but challenges its sufficiency.

TRUST — ACTION TO ENFORCE — CONVEYANCE BY MINOR TO AUNT — CONFIDENTIAL RELATION — AGREEMENT TO RECONVEY — IMPLICATION OF LAW — NONSUIT. — In an action to recover property claimed by the plaintiff to have been conveyed by her, while a minor, to her aunt, in trust, where the evidence of the plaintiff shows the confidential relations existing between her and her aunt, and that at the request of her aunt she conveyed to her the property, with the understanding that her aunt would hold it for her, the law implies an agreement by the aunt to reconvey upon request, and a trust is sufficiently established to entitle the plaintiff to recover, and the granting of a nonsuit is error.

ID. — INFANCY — DISAFFIRMANCE OF CONVEYANCE. — Such an action not being one brought to disaffirm the plaintiff's acts as a minor, her minority at the time of the conveyance is material only as tending to establish that the relations between herself and aunt were confidential, and it was not necessary for her to disaffirm the deed before bringing the action.

ID. — CONTINUING TRUST — STATUTE OF LIMITATIONS. — Where a trust, voluntarily assumed, was by the understanding of the parties to be a continuing one, and the trustee continued to hold according to the understanding, and never repudiated the relation, or did any acts inconsistent with it, the statute of limitations does not run as against the cestui que trust.

ID. — LACHES — TRUSTEE IN LOCO PARENTIS. — The fact that the plaintiff neglected to sue until sixteen years after she had attained majority, and two years after her trustee's death, does not constitute such laches as will prevent her obtaining relief, where it appears that for most of the time she was a member of the family of her trustee, who stood in loco parentis to her, and nothing is shown which would make it inequitable to enforce the trust.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*F. J. Castelhun*, for Appellant.

A deed obtained under such circumstances as the one in this case cannot be permitted to stand. (*Brown* v.

*Burbank,* 64 Cal. 101; see 2 Pomeroy's Eq. Jur., sec. 961; *Brison* v. *Brison,* 75 Cal. 525; 7 Am. St. Rep. 189; *Broder* v. *Conklin,* 77 Cal. 330; *De Mallagh* v. *De Mallagh,* 77 Cal. 126; *Feeney* v. *Howard,* 79 Cal. 525; 12 Am. St. Rep. 162.) The statute of limitations does not begin to run until the trust is repudiated and notice of its repudiation brought home to the knowledge of the *cestui que trust.* (*Hearst* v. *Pujol,* 44 Cal. 230; *Schroeder* v. *Jahns,* 27 Cal. 274; *Janes* v. *Throckmorton,* 57 Cal. 388; *Oliver* v. *Piatt,* 3 How. 411; Perry on Trusts, secs. 863, 864; *Merriam* v. *Hassam,* 14 Allen, 516; 92 Am. Dec. 795; *Chicago etc. R. R. Co.* v. *Hay,* 119 Ill. 499; *Decouche* v. *Savotier,* 3 Johns. Ch. 190; 8 Am. Dec. 478; *Shorter* v. *Smith,* 56 Ala. 208; *Jones* v. *McDermott,* 114 Mass. 400; *Paschall* v. *Hinderer,* 28 Ohio St. 568.) As the testimony shows that the plaintiff never demanded a reconveyance, and that her aunt never repudiated the trust, the statute of limitations was never set in motion. The aunt's possession is presumed to be rightful and in subordination to the title of the plaintiff. (*Jones* v. *McDermott,* 114 Mass. 400; *Hovenden* v. *Anesley,* 2 Schoales & L. 617; see *Baker* v. *Whitney,* 3 Sum. 486; *Kane* v. *Bloodgood,* 7 Johns. Ch. 122; 11 Am. Dec. 417.) A trustee cannot avail himself of the statute without plain, strong, and unequivocal proof of his renunciation of the trust, to destroy the rights and interests of the *cestui que trust.* (*Boteler* v. *Allington,* 3 Atk. 459; *Smith* v. *East,* 16 East, 283; *Keene* v. *Dearden,* 8 East, 248; *Smith* v. *Wheeler,* 1 Vent. 129.) If the trust is constituted by the act of the parties, the possession of the trustee is the possession of the *cestui que trust,* and no length of such possession will bar. (*Thompson* v. *Blair,* 3 Murph. 583; *Van Rhyn* v. *Vincent,* 1 McCord, 314.) A party cannot be guilty of laches so long as his rights are not disputed. (*Springer* v. *Springer,* 2 N. C. 527; *Baent* v. *Kennicutt,* 57 Mich. 268.) Mere lapse of time, however great, will not bar a recovery in equity, if an excuse be given which takes

hold upon the conscience of the chancellor, and is such as renders it inequitable that the bar should be interposed. (*Harris* v. *McIntyre*, 118 Ill. 275; see also Tyler on Infancy, 84; 2 Kent's Com. 238; *Wheaton* v. *Post*, 5 Yerg. 41; *Tucker* v. *Moreland*, 10 Pet. 75; *Jackson* v. *Carpenter*, 11 Johns. 542; *United States* v. *City of Alexandria*, 19 Fed. Rep. 609; 2 Story's Eq. Jur., p. 849, sec. 1520; *Carter* v. *Tice*, 120 Ill. 277; *Paschall* v. *Hinderer*, 28 Ohio St. 568; *Cotton* v. *Wood*, 25 Iowa, 43.) Delay in instituting proceedings where the parties are members of the same family is not so strictly regarded as where they are strangers to each other. (*Saver* v. *Fielder*, 9 Jur., N. S., 190; 2 Story's Eq. Jur., sec. 1520; see Perry on Trusts, sec. 230; *Picket* v. *Logan*, 14 Ves. 215.) The trustee should never be permitted to defeat the rights of *cestui que trust*, so long as it is possible for a court of equity to enforce them. (*Gunter* v. *Janes*, 9 Cal. 660.)

*T. C. Coogan*, for Respondents.

A grantor of land cannot maintain a bill in equity to reform his deed by inserting therein a reservation which was included in the oral agreement between the parties, if the omission to insert it does not appear to have occurred through fraud, accident, or mistake, but in consequence of his relying upon the promise of the grantee to carry out the oral agreement. Nor, in such a case, will relief be granted on the ground that the defendant's refusal to perform his promise is fraudulent. (*Andrew* v. *Spurr*, 8 Allen, 412.) Courts of equity always hold persons to the strictest proof in cases of this character, where there has been long delay, and where one of the parties is dead. (*Campbell* v. *Foster*, 2 Tenn. Ch. 402; *Nicoll* v. *Mason*, 49 Ill. 358; *Durant* v. *Bacot*, 15 N. J. Eq. 411). The plaintiff is bound by the deed, as she did not disaffirm it before majority, or a reasonable time thereafter. (Civ. Code, sec. 35.) As it is not alleged or proved that the deed was not read

over to the plaintiff, or that she did not understand
its contents, or that her signature was obtained by any
trick or artifice, or that its contents were falsely stated to
her, or that the means of knowledge were not open to
her, equity will not relieve her from errors in its con-
tents. (*Hawkins* v. *Hawkins,* 50 Cal. 558.) There has
been such laches, such unreasonable delay, in this case
that a court of equity should refuse relief. Especially
should this rule be applied here, involving, as it does, a
transaction to which one of the parties is deceased.
(*Smith* v. *Clay,* 3 Bro. C. C. 639; *Harris* v. *Hillegass,*
66 Cal. 79; *Hecht* v. *Slaney,* 72 Cal. 363; *Hatcher* v. *Hall,*
77 Va. 573; *Sullivan* v. *Portland and Kennebec R. R. Co.,*
94 U. S. 806; 2 Pomeroy's Eq. Jur., sec. 965; *Clark* v.
*Pratt,* 15 Or. 304.) Ignorance of the fraud will not
excuse laches, where the facts upon which the alleged
frauds rest are matters of public record, and such as
ought to afford a clew, which, if followed with reasonable
diligence, must have led to the discovery of the frauds.
(*Manning* v. *San Jacinto Tin Co.,* 7 Saw. 419; *Pratt* v.
*California Mining Co.,* 9 Saw. 354.) The evidence showed
that the action was barred by limitation, — by subdivis-
ion 2 of section 336, by subdivision 4 of section 338, and
by the provisions of section 343, of the Code of Civil Pro-
cedure. The rule contended for by the appellant, that
there was no repudiation of the trust, and hence that the
statute did not commence to run, has no application to
cases of implied trusts. (*Wilmerding* v. *Russ,* 33 Conn.
77; *King* v. *Pardee,* 96 U. S. 90.) The statute of limita-
tion is available as a defense in all cases of implied or
constructive trusts. (*Weaver* v. *Leiman,* 52 Md. 708;
*Newsom* v. *Commissioners,* 103 Ind. 526; *Churchman* v.
*Indianapolis,* 110 Ind. 259; *Dole* v. *Wilson,* 39 Minn. 330;
*Cooper* v. *Cooper,* 61 Miss. 676; *Saum* v. *Coffelt,* 79 Va.
510.)

TEMPLE, C. — Plaintiff appeals from a judgment of
nonsuit, and from an order refusing a new trial.

Plaintiff's father, as she avers, died June 5, 1858, leaving, as heirs, plaintiff, aged eight years, and her brother, aged about fourteen. Her mother had previously died. Her father was the owner, at the time of his death, of the lot in controversy. Just before her father's death, her aunt, who was a widow with three children, the present defendants, came to live with her father on the lot in suit, and plaintiff became at once a member of her aunt's family, and lived with her until her own marriage, in 1879.

While she was a minor, living with and in the custody of her aunt, her aunt represented to her that her brother would get her property from her, and said if plaintiff would convey it to her she would hold it in trust for plaintiff. Upon this representation and agreement, she conveyed her right to her aunt; that by mistake the deed was made absolute in form, and purported to be made for a consideration of five hundred dollars; that she and her aunt were both ignorant of this fact; that she received nothing for the conveyance, and did not discover the mistake until after the death of her aunt, in 1885. She never demanded or received a deed from her aunt, who remained in possession up to her death, and the defendants, who are the only descendants of her aunt, although fully aware of her rights, repudiate and deny them, and claim to be themselves the owners.

She sues to recover the property, for a conveyance, and for general relief.

The defendants do not deny the ownership of plaintiff's father, nor the facts which show that plaintiff was his heir, but they deny the trust, and aver that the deed was in fact an absolute conveyance for a valuable consideration. They also plead the statute of limitations, and charge laches in the bringing of the suit.

At the trial, the plaintiff was the only witness examined. She testified that her father died June 5, 1858, leaving herself and her brother as the only children, her

mother having died before; that shortly before her father's death, her aunt came to live with her father upon the lot in suit, and after her father's death they all continued to live there together. She said: "I continued to live with my aunt in the same house; my aunt took care of me, sent me to school, and I had no one else to provide for or look after me; but my uncle sometimes sent money to my aunt for me; I was received in and became a member of her family, and so continued until the time of my marriage, which took place April 30, 1879. . . . . After my father's death, when I was about sixteen years old, and while I was still living under my aunt's care, my brother tried to get me to sign a paper while I was visiting him, and I would n't sign it, and when I got home I told my aunt what he wanted me to do; my aunt said, 'I will fix it so he can't get your property from you'; the next day a notary called at the house, and I signed a paper; my aunt said, 'I will hold your property for you'; I did not know what the paper was, and never discovered it until my aunt's death, and a short while before this suit was brought, but I suppose it was read over to me before I signed it; my aunt gave me nothing, and I received nothing for signing the paper, and I was under age at the time."

The witness recognized a deed shown her as the deed she executed, dated October 12, 1866, purporting to be in consideration of five hundred dollars, acknowledged and recorded on the same day.

She testified that her aunt died September 10, 1885, leaving her surviving the defendants, her children; that she never asked her aunt for a deed, and never received one; the rental value was $7.50 per month.

On cross-examination she said that her aunt was in exclusive possession of the property at the time the deed was executed, and had paid all taxes and assessments, and that plaintiff had continued all the time to reside in the city and county of San Francisco, and knew these facts.

The plaintiff here rested her case, and the defendants moved for a nonsuit, which was granted.

In the motion for a nonsuit the alleged defects in the proof were specifically pointed out, but need not be formally repeated here.

Such a motion is in the nature of a démurrer to evidence. The truthfulness of the testimony is admitted, but its sufficiency is challenged.

The evidence shows that a confidential relation existed between plaintiff and the mother of defendants, and that at her request plaintiff conveyed to her an undivided half-interest in the property, with the understanding that her aunt would hold it for her. The law, under such circumstances, implies an agreement to reconvey upon request; and it is immaterial that there was no proof of a distinct understanding that the trust was to have been set out in express terms in the deed and was omitted by mistake.

Immediately upon the death of her father, plaintiff became the owner of one undivided half-interest in the premises, and it was not necessary for her to show administration and distribution of his estate.

This is not an action to disaffirm plaintiff's deed as the act of a minor, and to recover property thus conveyed. Plaintiff asks no relief which would not have been her due under the same circumstances had she been of mature age. Her minority is material only as tending to establish that the relations between herself and her aunt were confidential. It was not necessary, therefore, for her to disaffirm, under section 35 of the Civil Code.

The testimony of plaintiff being taken as true, there can be no doubt that it establishes a trust under the rule laid down in *Brison* v. *Brison,* 75 Cal. 525; 7 Am. St. Rep. 189.

Nor can any plausible claim be made that the action is barred by the statute of limitations. It was not a con-

structive trust forced upon the conscience of the trustee, but one voluntarily assumed, and which, by the understanding of the parties to it, was to be a continuing one. The trustee, so far as the evidence goes, continued to hold according to the understanding, and never repudiated the relation, or did any act inconsistent with it. (*Love* v. *Watkins,* 40 Cal. 565; 6 Am. Rep. 624; Tiffany and Bullard on Trusts, 19.)

There is more plausibility in the claim that there has been such laches as will prevent the plaintiff obtaining relief. As respondent has succinctly stated, she commenced her suit "two years after her aunt's death, eight years after her marriage, sixteen years after she had attained her majority, nineteen years, eleven months, and twenty days after the deed had been executed and recorded."

But it must be remembered that by the terms of the trust her aunt was to hold the title for her. The conveyance was made for that purpose. For most of the time she was a member of her aunt's family, who stood *in loco parentis* to her. Between four and five years only elapsed after her own marriage before her aunt's death.

The rental value of the place was small, and she knew that her aunt was paying the taxes, assessments, and repairs, the amount of which are not shown. The doctrine of laches is not applied so strictly between near relatives. (2 Story's Eq. Jur., sec. 1520.)

On the other hand, nothing is shown which would make it inequitable to enforce the trust. It does not appear that plaintiff has stood by, allowing the trustee to treat the property as her own, and under that belief expending money in improvements. There is nothing tending to show that, up to her death, Mrs. Hyland ever supposed or claimed that she had any interest in the property.

The defendants have expended nothing upon the property. It does not appear even that the premises have.

been included in their mother's estate by any proceedings in probate.

If any injury has resulted through the delay, it must be in rendering proofs of the real facts difficult; but there certainly was no culpable delay until after her aunt's death, since which nothing has occurred to increase the difficulties of the defendants as to the evidence.

That the plaintiff waited so long after she ceased to be a member of her aunt's family before asserting her claim to the property may possibly have some bearing upon the probability of her story, — that is, upon her credibility. We have not considered the value of the testimony, weighed against other proofs or circumstances.

We think the order and judgment should be reversed, and a new trial awarded.

BELCHER, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and a new trial awarded.