[Civ. Nos. 4388–4389. Second Appellate District, Division Two.—May 26, 1924.]

## PEARL ELLEN McRAE, Respondent, v. ROBERT H. McRAE, Appellant.

[1] TRUSTS—TRANSFER OF PROPERTIES—AGREEMENT OF HUSBAND TO RECONVEY—FINDING—EVIDENCE—APPEAL.—In actions by a wife against her husband to establish the fact that the latter is holding certain properties, which she transferred to him before their marriage, in trust for her and to compel a reconveyance thereof, the evidence having been conflicting as to whether it was agreed that the husband was to hold the properties in trust and reconvey them to the wife if she so requested, the determination of the trial court that the properties were to be held in trust will not be disturbed on appeal.

[2] ID.—DECLARATIONS BY HUSBAND SUBSEQUENT TO TRANSFER—AD-MISSIBILITY OF.—In such actions, the trial court did not err in admitting testimony of witnesses relative to declarations made by the defendant subsequently to the transfers in question showing his intent to retransfer the properties to plaintiff and his reasons for delaying in doing so.

[3] ID.—CHARACTER OF PROPERTIES NOT CHANGED.—In such actions, having obtained title and possession of plaintiff's properties ac-

---

1. See 2 Cal. Jur. 921; 10 Cal. Jur. 1172; 13 Cal. Jur. 870; 2 R. C. L. 204; 13 R. C. L. 1378.
   2. See 10 Cal. Jur. 1057; 1 R. C. L. 467.
   3. See 13 Cal. Jur. 814; 13 R. C. L. 1147.

quired by her before marriage, the defendant became the trustee of her separate estate, and the separate character of said properties was not changed subsequently to the marriage.

[4] ID. — STATUTE OF LIMITATIONS — REPUDIATION — KNOWLEDGE. — The statute of limitations does not run against a positive voluntary trust resting in parol until repudiation of it by the trustee, with knowledge of his repudiation brought home to the beneficiary. Only after this repudiation and knowledge does the four years statute of limitation apply.

---

(1) 4 C. J., p. 883, sec. 2855.   (2) 39 Cyc., p. 81.   (3) 31 C. J., p. 22, sec. 1096.   (4) 37 C. J., p. 903, sec. 267.

APPEAL from a judgment of the Superior Court of Los Angeles County. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

William Ellis Lady for Appellant.

James E. Fenton for Respondent.

CRAIG, J.—Two suits in equity were filed by the respondent against appellant on the nineteenth day of July, 1921, one involving certain furniture and other personal property, and the other an interest in a contract for the purchase from defendant Los Angeles Investment Company of lot 208 of St. Vincent College tract, in the city of Los Angeles, which respondent assigned and transferred to appellant on February 25, 1918, each praying that a decree be entered declaring that appellant held said property in trust for the use and benefit of respondent, and that he be required to reconvey the same, with the rents, issues and profits thereof, to respondent; also for an order restraining any transfer pending final judgment. Said suits were consolidated and tried together and the court below entered a decree in favor of the plaintiff, from which defendant Robert H. McRae appeals.

The complaints recite that prior to the transfers plaintiff and defendant became engaged to marry, and that their relations were confidential; that the plaintiff was not versed

---

4. Application of statute of limitations to express trusts, notes, 3 Ann. Cas. 200; 13 Ann. Cas. 1165; Ann. Cas. 1917C, 1018. See, also, 16 Cal. Jur. 480; 17 R. C. L. 708.

in business matters, whereas the defendant was a shrewd, intelligent and experienced business man, and that plaintiff at all of said times reposed absolute confidence in the defendant and trusted him implicitly, relying upon the truth and wisdom of all representations made by him in business transactions between them. She alleged that when they became engaged she possessed certain personal property which she had procured from one concern upon a so-called "lease contract," which in fact was a conditional sale, and a piece of real property which she had agreed in writing to purchase from the defendant Investment Company, and that she had paid installments upon each of these contracts. She further averred that after their engagement defendant persuaded plaintiff to assign and transfer to him all her interests in said contracts and properties, and that she did so assign and transfer them to defendant, but with the express understanding and agreement that defendant would retransfer the same to her at any time thereafter if she should so desire and request. It is alleged that defendant by his dominating influence over plaintiff, and because of their confidential relations, caused her to make such transfers, though he did so fraudulently and with intent to deprive her of her property, and that on October 13, 1920, he repudiated his agreement to return the same, and denied the existence of the trust, but that at all the times previously to this latter date he had admitted that he held the legal title and possession of said property for her use and benefit, and promised to reassign the same whenever she might desire and so request. The parties were married on April 18, 1918, and plaintiff alleges that on many occasions prior to and after their marriage she demanded of defendant that he return the property to her, but that defendant continuously put her off, and finally refused to do so.

The defendant admitted the transfers to him, but denied that he ever promised to reassign or retransfer the property to plaintiff, and alleges that prior to February 25, 1918, he had advanced various sums of money to plaintiff, aggregating more than the value of plaintiff's interest in said property, and that in consideration thereof the plaintiff caused the officers of the Investment Company to prepare an assignment of her interest in the real property to defendant, and an acceptance and agreement on his part to pay the balance due said company, which were signed by the re-

spective parties, and that plaintiff personally wrote and signed the transfer of said personal property to defendant "for value received."

Plaintiff alleged that at the time of said marriage she had money, which she thereafter expended for the upkeep of the household, and that the defendant collected rents from said property amounting to $1,338.60, out of which he had paid $940 on account of installments due under the terms of the contract of purchase; that she made all the payments due on the personal property, except $110, which the defendant advanced to her and thereafter collected from another party to whom he rented the furniture.

The defendant denied that the plaintiff had money at the time of their marriage, as alleged, or that she paid household expenses; he alleged that he paid all of the installments of purchase price, and that he was the owner of said property, for a full and adequate consideration, but denied that he paid more than a small amount, if anything, out of the rentals; the defendant alleged and testified that he purchased the property from plaintiff at the plaintiff's cash valuation, and that he satisfied the indebtedness against all of the real and personal property in question.

The trial court found from the evidence adduced that at the time of the transfers of said properties the parties were engaged to marry each other, and that their relations were confidential; that at defendant's request, and without consideration, the plaintiff transferred the properties to defendant, as alleged in the complaint, through fraud and selfish design of the defendant; that all payments made on account of purchase price after said marriage and before September 1, 1920, were made from funds of the community, but that such payments did not exceed the amount of rents collected. It was further found that defendant received as rentals for the use of said properties $1,490, and that he advanced to the plaintiff $781.40; that the plaintiff is the owner of said properties, and of the rents collected by defendant, and that the latter holds possession thereof in trust for the use and benefit of the plaintiff. Judgment was rendered accordingly canceling the assignments and awarding the properties to plaintiff.

This appeal is from the judgments and orders denying motions for new trial in both cases, and as grounds thereof it is maintained that the evidence is insufficient to support

the findings and judgment that appellant agreed to hold
the property in trust for respondent; that the trial court
erred in admitting the testimony of witnesses relative to
declarations made by appellant subsequently to the trans-
fers, and lastly, that the evidence shows that subsequent to
the marriage of the parties the realty and furniture became
community property.

There is abundance of testimony by the plaintiff, both on
direct and cross-examination, to the effect that when she
became engaged to marry the appellant they conversed about
his wide experience in business affairs; that she had been
a school-teacher and was practically without such experi-
ence; that the appellant on many occasions urged that he
be permitted to care for her affairs, and that she put the
properties in his name for that purpose. She testified that
she replied that she preferred to manage her own affairs,
but that appellant assured her that it was to her interest to
make the transfers, and that so long as they were to be mar-
ried he· could relieve her of the burden and would always
have her best interests in view; that he would hold the prop-
erties in trust for her and that at any time she should de-
sire that he return them he would do so; that "he wouldn't
think of doing anything against me at all, and he would,
any time I wanted the house, return it to me, he certainly
would do it, but he felt he could transact the business and
take care of my affairs better than he thought I would
be able to." She further testified that she trusted him
implicitly, and that she finally made the assignments, but
that because of their confidential relations and her belief
in his integrity and honest intentions, she did not have any
agreement in writing as to the purposes of the transfers.
Other witnesses testified that in the autumn of 1919 the
appellant stated that he intended to retransfer the proper-
ties to respondent, but that he had delayed so doing be-
cause he feared that she would leave him as soon as she
obtained her property, and that he was "getting old and
he was not going to be turned out in the cold and have to
start life anew and build up a new home." One witness
testified that appellant was told by the witness' husband
that the only fair thing to do would be to return the home
to Mrs. McRae, to which appellant replied, "I have always
intended to give the property back to her, but that is the
only way I have of holding her. [1] Appellant testified
that he did not make such statements, and denied any con-

versation or arrangement as described by respondent, which created a conflict of evidence necessitating a decision by the trial court as to the credibility of witnesses, and when this question is so determined it will not be disturbed upon appeal. (*Rolland* v. *Porterfield*, 183 Cal. 466 [191 Pac. 913]; *Wall* v. *Wall*, 183 Cal. 431 [191 Pac. 687].)

[2] It is next contended that the trial court erred in admitting in evidence the testimony of respondent's witnesses which purported to quote statements made by appellant in 1919. It is insisted that his statements made subsequent to the assignments could not be related unless having direct reference to language or acts of the parties at the time the transaction was consummated. Appellant cites as authority for his position *Sherman* v. *Sandall*, 106 Cal. 373 [39 Pac. 797]; *Tillaux* v. *Tillaux*, 115 Cal. 663 [47 Pac. 691; *Smith* v. *Mason*, 122 Cal. 426 [55 Pac. 143]; *Sheehan* v. *Sullivan*, 126 Cal. 189 [58 Pac. 543], and *Cooney* v. *Glynn*, 157 Cal. 583 [108 Pac. 506]. *Sheehan* v. *Sullivan* is authority for the rule that such statements *may* be introduced in corroboration of plaintiff's evidence, but it was there held that since there was no evidence of the existence of a trust, they could not be used for the purpose of establishing one. In *Cooney* v. *Glynn, supra,* it was said that the offered statements in that case related to what was said and done at the time of executing the deed, but it is not held that such statements as here presented would be inadmissible. *Sherman* v. *Sandall, supra,* and *Tillaux* v. *Tillaux, supra,* each decided that the conveyance in question was absolute, without any agreement of trust being made at the time of the execution thereof, and that subsequent oral declarations of the parties could not create a trust where none formerly existed.

*Taylor* v. *Morris*, 163 Cal. 717, 722 [127 Pac. 66], is pertinent, and is decisive of the case before us. We quote from the opinion in that case:

"It is conceded, as it must be, that there is evidence to establish the plaintiff was trustee for her mother of the Villa property, but it is asserted that the deeds by which her mother conveyed title to her were absolute in form; that the stipulation of the parties in this action acknowledges her absolute title and that, therefore, the evidence to establish the trust in contradiction of the deed and the stipulation was inadmissible. To this proposition the familiar sections of the code and the familiar decisions under them, forbid-

ding the attempt to vary the language of written contracts by parol are cited. But appellant mistakes the scope of the rule. The statute of frauds is never permitted to become a shield for fraud, and fraud at once arises upon the repudiation by the trustee of any trust, even if that trust rests in parol. When a trust rests in parol, either parol evidence must be received to establish the trust, or the faithless trustee will always prevail. Certainly no elaboration of so plain a proposition is necessary, and it should be sufficient to refer to such cases as *Butler* v. *Hyland,* 89 Cal. 575 [27 Pac. 1108]; *Hayne* v. *Hermann,* 97 Cal. 261 [32 Pac. 171]; *Odell* v. *Moss,* 130 Cal. 352 [62 Pac. 555]; *Becker* v. *Schwerdle,* 141 Cal. 391 [74 Pac. 1029]; *Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308]; *Cooney* v. *Glynn,* 157 Cal. 589 [108 Pac. 506]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]. . . .

"The statements of Mrs. Taylor were not promises. They were admissions and acknowledgments of a trust relationship resting in parol, which trust relationship was created and existed contemporaneously with the acquisition by her of the Villa property and the purchase by her of the Flower Street flats. So, while it is true, that a constructive trust cannot be created by a naked promise of the grantee after conveyance made to him, it is equally true that his declarations showing the existence of a trust at the time he accepted the conveyance, afford strong evidence against him in the establishment of the trust. . . .

"The difficulty with appellant's contention is that the claim against her does not arise under an implied trust but under a positive, voluntary trust resting in parol, and it is of course well settled that the statute of limitations does not run against such a trust until repudiation of it by the trustee, with knowledge of his repudiation brought home to the beneficiaries. Only after this repudiation and knowledge does the four years statute of limitation apply. (*Odell* v. *Moss,* 130 Cal. 352 [62 Pac. 555]; *Norton* v. *Bassett,* 154 Cal. 415 [129 Am. St. Rep. 162, 97 Pac. 894].)" *Brison* v. *Brison,* 90 Cal. 323 [75 Pac. 525] is also applicable in that facts quite similar to those related by the plaintiff's witnesses in this case were held to establish a constructive trust.

[3] Having obtained title and possession of respondent's properties acquired by her before marriage, appellant became the trustee of her separate estate. As was said in

*Carlson* v. *Carlson,* 10 Cal. App. 300, 303 [101 Pac. 923], ''Labor and expenditures incurred in the improvement of the property have no operation upon the direction of the title. They, at most, but create a demand which, under certain circumstances, may be enforced as a claim against the owner. (*Noe* v. *Card,* 14 Cal. 606.) In the absence of any specific agreement, no lien would be created on account of money expended by a husband upon the separate property of the wife. (*Peck* v. *Brummagin,* 31 Cal. 450 [89 Am. Dec. 195].) The law will not infer from such expenditures alone an agreement either to change the character of the property or an intent to charge the same with a lien. It must rather be presumed that it was the intention of the husband to advance the money paid for the benefit of his wife's estate and that it was intended to accrue to her interest (*Flournoy* v. *Flournoy,* 86 Cal. 294 [21 Am. St. Rep. 39, 24 Pac. 1012]). There is no finding of any fact, nor is there anything in the record tending to rebut the presumption that the payment by the husband was to accrue to plaintiff's interest.'' As was said in *Chard* v. *Johns,* 24 Cal. 98 [85 Am. Dec. 49], ''the husband cannot, by any independent act of his, acquire an interest in the separate estate of the wife. That the husband cannot, by his management, supervision, or labor, acquire any interest in the estate itself, is conceded, and by parity of reason he cannot acquire any interest in the increase, for that is hers also, and upon the same terms—the latter being a corollary of the former proposition. There is no magic in the touch or manipulation of the husband by force of which separate is transformed into common property.'' These authorities preclude appellant's claim that subsequent to the marriage the realty and furniture became community property.

[4] Appellant also pleaded the statute of limitations, but this question was covered by the opinion of the supreme court in *Taylor* v. *Morris, supra,* and requires no further discussion.

The judgments are affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1924.

All the Justices concurred.