[Civ. No. 8161. Third Dist. Feb. 27, 1953.]

WILLIAM H. STOBIE, as Administrator, etc., Respondent, v. WILBUR STOBIE, an Incompetent Person et al., Appellants.

Lafayette J. Smallpage and Harold J. Willis for Appellants.

Louttit, Louttit & Wilson for Respondent.

SCHOTTKY, J.—On January 17, 1947, Frank A. Shackford commenced an action against appellants Wilbur E. Stobie and Vera Mae Stobie, husband and wife, in which action plaintiff sought (1) to impose a constructive trust upon certain real property hereinafter referred to as the "Lindsay Street property," located in Stockton, California, the record title of which, on the date of the filing of the action, stood in the name of appellant Wilbur E. Stobie, (2) damages for the taking and converting by appellant Wilbur E. Stobie of certain property, and (3) an accounting.

Appellants, Wilbur E. Stobie and Vera Mae Stobie, filed an answer denying any trust, pleading the statute of frauds, and alleging that if the agreement was made as alleged by respondent it was in fraud of the estate of the incompetent father of respondent Wilbur E. Stobie. Appellants also cross-complained in said action that they were the owners of the Lindsay Street property and sought to have their title thereto quieted against Shackford. As a separate cause of action appellant Wilbur E. Stobie alone cross-complained against respondent for an accounting for malfeasance while acting as Wilbur's attorney in fact.

The action was tried before the court sitting without a jury, the trial commencing on November 30, 1948, and with several continuances, extended through December 9, 1948, at which time the cause was ordered to stand submitted upon the filing of briefs. However, appellants' motion to reopen the trial

was granted on March 16, 1950, and a further trial was had on May 1, 1950. On November 10, 1950, the trial court ruled in favor of respondent, an interlocutory judgment being filed on April 11, 1951, with final judgment being rendered on August 1, 1951, after appellants had filed an accounting of the rents, issues and profits which they had collected from the Lindsay Street property, appellants having, at the beginning of 1946, taken over the management of all properties standing in appellant Wilbur E. Stobie's name.

The accounting between respondent and appellants, separately stated as to the Lindsay Street property and the other matters handled by respondent in his fiduciary capacity for Wilbur, the latter appearing under the heading "General Accounting," had been ordered in the interlocutory order. By the terms of the judgment Shackford was entitled to a conveyance of the said real property upon payment of $5,707.29, the net amount found to be still owing by him after the completion of all of the accounting. This appeal is from said judgment.

Appellants attack the judgment on a number of grounds. They first contend that the court erred in holding that appellants, Wilbur E. Stobie and Vera Mae Stobie, were constructive trustees for respondent Shackford of the Lindsay Street property, and that the evidence does not justify that decision because if any trust were created it was an oral express trust and void under our statutes. Appellants also set forth a number of other contentions which we will refer to hereinafter.

Before discussing the points raised by appellants upon this appeal we shall summarize briefly the evidence as shown by the record, bearing in mind the familiar rule that all conflicts must be resolved in favor of respondents and all legitimate and reasonable inferences must be indulged in to uphold the judgment, and that when a judgment is attacked as being unsupported by the evidence, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. (*Juchert* v. *California Water Service Co.*, 16 Cal.2d 500 [106 P.2d 886].)

Frank Shackford was the uncle of defendant Wilbur E. Stobie, defendant's mother being Shackford's sister; Shackford was also the guardian of the person and estate of defendant's father, Wilbur J. Stobie, father Stobie having been adjudicated a mentally incompetent person and confined in

the state asylum. William H. Stobie, who now represents the estate of the deceased Shackford, is the brother of defendant Wilbur E. Stobie. Subsequent to the filing of this action on January 17, 1947, defendant Wilbur E. Stobie was, on November 10, 1947, adjudicated an incompetent person, and he appears by his wife and guardian, Vera Mae Stobie; Vera Mae Stobie is also an individual defendant. The property which is the subject of the action, referred to as the Lindsay Street property, is located in Stockton, California, and consists of two lots, upon one of which is located the parties' residence of many years, and upon the other, a corner lot, there were located two small buildings, a Log Cabin restaurant and a flower shop, which were subsequently removed.

In 1922 or 1923, upon the death of his mother, defendant Wilbur and his two older brothers, Sam and William, came to Stockton to live with their maternal grandmother, Mrs. Emma Shackford, and her son, their uncle, plaintiff Frank Shackford, in the residence located on the Lindsay Street property. Wilbur was at that time a boy of about 6 years of age. The brother, Sam, lived on the premises only a short while, was subsequently adjudicated an incompetent person and was confined in the state asylum. The brother, William, continued to make his home there until 1930, when he moved to San Francisco, where he still resides. Mrs. Emma Shackford died in 1936; after that, plaintiff Shackford and defendant Wilbur continued to live together on the premises until Wilbur was drafted in February of 1942. Upon his induction Wilbur made a general power of attorney in favor of his uncle, Shackford, which was not cancelled until October 5, 1946. While in the military service Wilbur suffered a head injury which ultimately resulted in the loss of nearly half of his brain. He was discharged from the army on November 14, 1945, and was married to his present wife, and now guardian, in Missouri on November 18, 1945. In March of 1946, after he was discharged from the Veterans Hospital in Missouri, Wilbur and his wife came to Stockton and moved into the Lindsay Street house on March 22, 1946, Shackford shortly thereafter moving to other property which he owned. Defendant Wilbur and his wife returned to Missouri late in 1946, and in the summer of 1947 Wilbur was hospitalized at Jefferson Barracks, Missouri, and his wife was appointed his guardian. By the time of the trial of this action in November, 1948, they had returned to California and were again living in the Lindsay Street home. While Wilbur had

improved so as to be able to testify during the first hearing of the action, immediately afterward his condition became so serious that he was taken to the Veterans Hospital at Palo Alto, where, according to appellants' brief, he is still confined.

In January of 1935, title to the Lindsay Street property stood in Shackford's name, it having at various times previous thereto been either in his or his mother's name; it was encumbered by a deed of trust and delinquent taxes. Pursuant to the advice of family counsel, one John Chase of Visalia, Shackford, on January 30, 1935, deeded the property to the brother William, who was then of age. On February 9, 1935, William executed a deed conveying the property back to Shackford, but only the former deed was recorded. After this, a loan of $4,900, approved by the probate court of Tulare County, was made from the estate of the incompetent father Stobie to William, with the Lindsay Street property as security therefor. The entire plan was executed pursuant to an oral agreement by William to hold the property in trust for Shackford until Shackford repaid the loan to father Stobie's estate, after which William would reconvey the property to Shackford, the parties having been advised by counsel Chase that it would be illegal for the guardian of the estate to make a loan to himself upon his own property out of estate funds. At the trial plaintiff Shackford defended the transaction as having been prompted merely by the desire to invest available funds and thus benefit the estate, and as not being unique in that defendant Wilbur did, from time to time, also borrow money from his father's estate for the acquisition of property. Defendants attacked the transaction as being a fraud upon the court in that it was the improper use by the guardian of estate funds for his personal benefit to protect his property from foreclosure. In August of 1941, the brother, William, conveyed the property to defendant Wilbur, by a deed which was recorded; there was no reconveyance deed to Shackford. Plaintiff's explanation of this transaction was that it was a precautionary measure against possible marital difficulties of brother William, and that counsel outlined fully to Wilbur the trust relationship pursuant to which he would hold the property. No consideration was paid for either the conveyance to William or Wilbur. In February of 1942, a loan from father Stobie's estate to Wilbur, secured again by the Lindsay Street property, was approved in the amount of

$8,600. This money was used to pay off the 1935 loan with interest, the delinquent taxes, penalties and interest owing to the city of Stockton, and moving the Log Cabin restaurant and floral building to other property of Wilbur's, so as to clear off the corner Lindsay lot; this was all done in order to conclude a lease of that lot to the Richfield Oil Company. In April of 1944, defendant Wilbur's various obligations to father Stobie's estate, including the $8,600 loan on the Lindsay Street property, were consolidated into a total obligation of $24,000, including principal and accrued interest. Plaintiff Shackford accomplished this for Wilbur under his general power of attorney, for the purpose of reducing the interest rate from 6 per cent to 4 per cent. The obligation was secured by a blanket deed of trust upon all property standing in Wilbur's name, and was represented by two notes, one in the amount of $19,000, and the other in the amount of $5,000. There is conflict as to whether the principal and accrued interest then owing by Wilbur totaled $24,000 or only $19,000, and it is one of the specific errors assigned by defendants and discussed hereinbelow. There is ample evidence in the record that during all of their years together extending until the latter part of 1946, the relationship existing between Shackford and defendant Wilbur was of an extremely close and confidential nature. In May of 1946, father Stobie died and Shackford was discharged as guardian of the estate in July of 1946, no objection having been filed to his annual or final accounts. The estate was closed on December 24, 1946, and, as part of the distribution, all of defendant's Wilbur's promissory notes were satisfied on April 9, 1947, as evidenced by Wilbur's receipt for his interest in the estate of his father.

Late in 1946, Wilbur repudiated the trust, refused to reconvey upon Shackford's offer of payment, accused Shackford of mismanagement during the life of the general power, and revoked said power. Subsequent to the repudiation, Shackford commenced this action on January 17, 1947, his complaint alleging the previous dealings between the parties, praying that their accounts be settled, offering to pay whatever amount the court found him still to owe, and asking that a constructive trust be imposed upon defendants. Vera Mae Stobie was named an individual defendant because she asserted some interest in the property, and prior to the trial she was also ordered to appear as Wilbur's guardian. (Shortly after the filing of the original complaint, Wilbur

purported to convey a joint tenancy interest in all his property to his wife.)

The following analysis of the evidence set forth in the memorandum opinion of the learned trial judge is amply supported by the record:

"The evidence adduced in this proceeding is conflicting in many respects and on the whole somewhat confusing. It does appear quite clearly, however, that in addition to family ties between plaintiff (uncle) and defendant (nephew) the relationship existing over a period of many, many years was not only intimate but extremely confidential in character. As a matter of fact, it seems that plaintiff and defendant Wilbur Stobie worked together on all matters, the affairs of each being of genuine mutual interest. So, also, it may well be that that counsel and assistance of plaintiff was an important contributing factor in the acquisition of some considerable property by defendant Wilbur. Perhaps the very intimacy of the relationship explains to some extent the informality with which business matters were transacted.

"It appears quite clearly also that plaintiff and defendant Wilbur agreed upon an arrangement under which Defendant Wilbur was to acquire the Lindsay Street property from his brother William subject to the rights of plaintiff upon payment of the indebtedness due thereon. This deal seemed mutually advantageous, designed as it was to protect the home place occupied by both as well as to bolster the security situation particularly from Wilbur's point of view. It is admitted, tacitly if not actually, that defendant Wilbur was aware of the existence of the original arrangement between Plaintiff and William for a long time, perhaps from its inception. So, also, it is quite evident that this situation became a source of some concern either because of a change in William's status or perhaps purely for reasons of convenience. It seems significant also that prior to his marriage there was no misunderstanding, defendant apparently always recognizing the rights of plaintiff.

"The subsequent repudiation of the arrangement found to exist between plaintiff and defendant Wilbur necessitates equitable relief through the medium of a constructive trust."

Appellants first contend that the evidence does not justify the imposition of a constructive trust, and that if any trust was in fact created it was an oral express trust and void under our statutes. We are satisfied that under our decisions appellants' contention cannot be sustained. ▮ This ques-

tion is fully and ably discussed in *Steinberger* v. *Steinberger,* 60 Cal.App.2d 116 [140 P.2d 31] (hearing denied) where it was held that breach of an oral promise to reconvey by the transferee or his administrator when the transferee was in a confidential relationship with the transferor at the time of the transfer constitutes sufficient fraud to create a constructive trust. In that case the court said, pages 119, 122:

"California has apparently aligned itself with the English and the so-called minority American view. In *Taylor* v. *Morris,* 163 Cal. 717 [127 P. 66], there was involved a similar problem to the one here presented. Without reference to the confidential relationship there existing, the court stated (p. 722): 'The statute of frauds is never permitted to become a shield for fraud, and fraud at once arises upon the repudiation by the trustee of any trust, even if that trust rests in parol. When it rests in parol, either parol evidence must be received to establish the trust, or the faithless trustee will always prevail. Certainly no elaboration of so plain a proposition is necessary, and it should be sufficient to refer to such cases as *Butler* v. *Hyland,* 89 Cal. 575 [26 P. 1108]; *Hayne* v. *Hermann,* 97 Cal. 261 [32 P. 171]; *Odell* v. *Moss,* 130 Cal. 352 [62 P. 555]; *Becker* v. *Schwerdle,* 141 Cal. 391 [74 P. 1029]; *Fanning* v. *Green,* 156 Cal. 279 [104 P. 308]; *Cooney* v. *Glynn,* 157 Cal. 589 [108 P. 506]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 P. 430]. In *Gray* v. *Walker,* 157 Cal. 381 [108 P. 278], however, a department of the Supreme Court expressly adopted the so-called majority view, citing such cases as *Feeney* v. *Howard,* 79 Cal. 525, 526 [21 P. 984, 12 Am.St.Rep. 162, 4 L.R.A. 826]; *Babcock* v. *Chase,* 111 Cal. 351 [43 P. 1105]; *Sheehan* v. *Sullivan,* 126 Cal. 189 [58 P. 543]. See, also, *Smith* v. *Mason,* 122 Cal. 426 [55 P. 143], adopting the so-called majority American view. The more recent California cases have clearly followed the rule of *Taylor* v. *Morris, supra,* and have held that a constructive trust arises and will be enforced to compel restitution upon violation of the oral promise. (*O'Brien* v. *O'Brien,* 50 Cal. App.2d 658 [123 P.2d 877]; *Robertson* v. *Summeril,* 39 Cal. App.2d 62 [102 P.2d 347]; *People* v. *Ahern,* 31 Cal.App.2d 655 [88 P.2d 787]; *McRae* v. *McRae,* 67 Cal.App. 480 [227 P. 933]; *Airola* v. *Gorham,* 56 Cal.App.2d 42 [133 P.2d 78].)

. . . . . . . . . . . . . .

"The cases are clear that where there is some sort of a status between the grantor and the grantee, and confidence is imposed, a constructive trust will be imposed upon repudia-

tion of the oral promise to reconvey. Thus actual trust and confidence, plus the relationship of parent and child, is sufficient (*Robertson* v. *Summeril,* 39 Cal.App.2d 62 [102 P.2d 347]; *Cooney* v. *Glynn,* 157 Cal. 583 [108 P. 506]; *Nordholt* v. *Nordholt,* 87 Cal. 552 [26 P. 599, 22 Am.St.Rep. 268]; *Mead* v. *Mead,* 41 Cal.App. 280 [182 P. 761]); as is that of husband and wife (*Allen* v. *Meyers,* 5 Cal.2d 311 [54 P.2d 450]; *Kohn* v. *Kempner,* 59 Cal.App. 621 [211 P. 805]; *Smith* v. *Lombard,* 201 Cal. 518 [258 P. 55]; *Taylor* v. *Bunnell,* 77 Cal.App. 525 [247 P. 240]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 P. 430]; *Jones* v. *Jones,* 140 Cal. 587 [74 P. 143]; *Brison* v. *Brison,* 75 Cal. 525 [17 P. 689, 7 Am.St.Rep. 189]), even where the relationship is meretricious (*Cole* v. *Manning,* 79 Cal.App. 55 [248 P. 1065]). The trust has also been imposed where actual trust and confidence existed and the grantor and grantee were brother and brother (*O'Brien* v. *O'Brien,* 50 Cal.App.2d 658 [123 P.2d 877]; *Logan* v. *Ryan,* 68 Cal.App. 448 [229 P. 993]; *Cummings* v. *Cummings,* 55 Cal.App. 433 [203 P. 452]), or were brother and sister (*Tench* v. *McMeekan,* 17 Cal.App. 14 [118 P. 476]), or were attorney and client (*Broder* v. *Conklin,* 77 Cal. 330 [19 P. 513], 121 Cal. 282 [53 P. 699]), or principal and agent (*Kimball* v. *Tripp,* 136 Cal. 631 [69 P. 428]) or client and business advisor (*Sanguenetti* v. *Rossen,* 12 Cal.App. 623 [107 P. 560]). Coming closer to the relationship here involved, it has been held that actual trust and confidence, plus the relationship of aunt and niece, will be sufficient to raise the constructive trust (*Butler* v. *Hyland,* 89 Cal. 575 [26 P. 1108]) as is the relationship of uncle and niece and adopted daughter (*Alaniz* v. *Casenave,* 91 Cal. 41 [27 P. 521]) and where the grantor and grantee were aunt and nephew by marriage (*People* v. *Ahern,* 31 Cal.App.2d 655 [88 P.2d 787]). Trusts have also been imposed where the grantor and grantee were an engaged couple (*McRae* v. *McRae,* 67 Cal.App. 480 [227 P. 933]), and where the grantor and grantee had 'relations of great confidence' and were later married (*Bradley Co.* v. *Bradley,* 165 Cal. 237 [131 P. 750]; *id.,* 37 Cal.App. 263 [173 P. 1011]) and where they were brothers-in-law (*Anderson* v. *Broadwell,* 119 Cal.App. 130 [6 P.2d 260].)''

Appellants argue that under Shackford's version of the facts, Wilbur was to take all of the risk incident to ownership of the property with no chance at any profits, which would be a most unreasonable and unfair arrangement, no

matter how friendly the parties were. Appellants then list seven "confirmations" of Wilbur's view that he did not take title to the property in 1941 subject to any rights in Shackford, but rather took title under an agreement that if he would assume and pay the loans thereon, the property would be his.

Appellants make an able and earnest argument in an effort to prove that the record does not sustain the findings of the trial court. If the findings and judgment had been in favor of appellants, their argument would be very helpful in pointing out evidence in support of such judgment, but in the face of the adverse judgment, the testimony pointed out by appellants merely accentuates the conflict in the testimony, and, as hereinbefore pointed out, it was the province of the trial court to weigh the evidence. Therefore we deem it unnecessary to discuss at length the argument of appellants as to the insufficiency of the evidence.

Appellants next contend that the trial court erred in finding that respondent committed no fraud upon the probate court of Tulare County in negotiating and effectuating the loan from father Stobie's estate. However, the argument of appellants upon this point is in effect an argument upon the weight of conflicting evidence. While the record might support a finding that the dealings with father Stobie's estate constituted fraud of such a character as to prevent recovery, that was not the finding which was made, and this court cannot say that as a matter of law the record will support only the conclusion urged by appellants. Rather there is adequate support for the view taken by the trial court that the dealings with father Stobie's estate were not improper.

Appellants' third asserted error of law is that: "The court gave Vera Stobie an equal interest in the moneys which Shackford was ordered to pay because of the Lindsay and other property accountings." Appellants contend that the only matter here at issue in which Wilbur and Vera Stobie had a joint interest was the Lindsay Street property, since Wilbur had, on March 17, 1947, subsequent to the filing of the lis pendens on January 17, 1947, purported to convey a joint tenancy interest to his wife. Wilbur was the sole plaintiff in that portion of the cross-complaint which prayed for an accounting from Shackford as attorney in fact for the handling of Wilbur's affairs concerning property other than the Lindsay Street property, and since Vera Mae Stobie was

not a party to that part of the action she should not have received judgment for any portion of the moneys awarded to Wilbur thereunder.

Respondent urges, we think correctly, that this is a matter of accounting as between appellants themselves, who are husband and wife, as well as the wife's being guardian of the incompetent Wilbur. Respondent says he has no information on the matter, and that the appellants offered no testimony other than an accounting involving both receipts and disbursements, and set up by appellants without any distinction as between themselves, plus the testimony of Vera Mae Stobie herself, which indicated that she had some interest in the moneys involved in that accounting. Respondent further points out that Vera Mae Stobie had some interest in all of Wilbur's property for about a year and a half immediately preceding trial of the action, because Wilbur's conveyance of joint tenancy interest to her in March of 1947 covered all of his property.

Since the dispute is by one appellant as against the other, and since they do not point to any evidence in the record setting forth the extent of each appellant's interest in these moneys, it would appear that this court has no basis for entertaining this issue on appeal.

Appellants' fourth and fifth asserted errors of law are stated as follows:

"Fourth error of law: In the accounting involving the 'Lindsay property,' the court allowed Wilbur interest on a portion of the moneys he paid out for the Lindsay property from the date of the making of said advances to January 17, 1947, only. Further, the court allowed interest during part of the time at 6% and part at 4%.

"Fifth error of law: The court's finding (Cl. Tr. p. 125, line 11) that Shackford, at the time Wilbur paid off the loan on Lindsay Street, tendered to Wilbur the sum of the latter's advances for the care and upkeep and loan payment, is not supported by one iota of evidence."

Appellants combine their arguments as to these two asserted errors and contend, in effect, that the filing of the complaint, with its offer of payment, did not constitute a sufficient tender to stop the running of interest. Besides, appellants assert, the question is not one of tender at all, because the agreement urged by respondent is that Wilbur was to keep the property until Shackford paid the loan, not to Wilbur, but to the estate of father Stobie, and since that has never been

done, nothing has happened to stop the running of interest; and if Wilbur be not granted interest until he is reimbursed, Shackford is unjustly enriched. As to the percentage of that interest, they contend that irrespective of the rate on the notes to father Stobie's estate, Wilbur should be allowed interest at 7 per cent—certainly as to those moneys, set at some six or seven thousand dollars, that did not come from any loans. Appellants also urge Civil Code, section 1914, that a loan is presumed to be made upon interest unless otherwise expressly stipulated at the time in writing.

Respondent argues that to recover interest, the party must show a rate created by statute or an agreement therefor, express or implied, and that here the trial court properly considered all the circumstances in determining whether appellants were entitled to any interest at all, and in setting the rate thereof at the same rates payable on the notes to father Stobie's estate. Further, there were no actual "out of pocket" expenditures by either appellants because the income from the Lindsay Street property plus the $8,600 loan thereon paid the various costs attributable to that property. Except for those payments by respondent (the crediting of his guardianship fee), the interest on the loans was allowed to accrue, and in this action to impose a constructive trust it was within the discretion of the trial court to adjust the affairs of the parties and provide for reimbursement as befits the equity of the case, citing *Milloglav* v. *Zacharias*, 33 Cal.App. 561 at 565 [165 P. 977]. Indeed, respondent says, the court exercised its discretion liberally in light of the rule that a constructive trustee who has repudiated his trust is not entitled to demand reimbursement for moneys expended in preservation or improvement of the property, citing *Marsh* v. *Smith*, 46 Cal. App. 692 [189 P. 1037]. ▮ As for tender, respondent points to appellants' own evidence, the letters from Attorney Cavalero in October of 1946, as stating that respondent offered to pay the amounts due. Also cited is respondent's own testimony to the effect that tender was made through Attorney Chase.

We are satisfied that there is ample support in the record for the finding that tender was made by respondent, and also that the court, in the exercise of its equitable powers, did not err in fixing the interest rates in accordance with the rate in the notes to father Stobie's estate.

▮ Appellants next contend that the court erred in allowing the $5,000 note executed in April, 1944, by respondent

Shackford under his power of attorney. They argue that this note, together with the interest thereon, should be charged back to respondent until respondent shows that this money was legitimately used in the discharge of some obligation owing by Wilbur, either to father Stobie's estate or to someone else. They object to the holding that Shackford's guardianship account, filed and approved by the probate court of Tulare County, and showing the existence of the note, was a sufficient voucher to show the legitimacy of that item.

Respondent in reply states that the $5,000 represented the accrued interest on appellant Wilbur's various obligations, the principal of which totaled $19,000, and we are satisfied that the record supports the contention of respondent and the holding of the trial court.

Finally, appellants contend that the trial court abused its discretion in not permitting appellants' counsel to cross-examine respondent Shackford further in regard to the $5,000 note following the granting of their motion to reopen the case for further evidence. The record shows that some 15 months after the case had been tried and submitted on briefs, the case was reopened upon motion of appellants. Certain evidence was introduced and counsel for appellants then endeavored to recall respondent Frank Shackford for further cross-examination. Counsel for respondent objected and the court, in sustaining the objection, stated: "Well, I think we have to bring the matter to a conclusion Mr. Smallpage unless you are in possession now of something that hasn't been gone into, something entirely new. Just to call him again for additional statutory cross-examination would seem not to be appropriate as a matter of procedure. I think perhaps there may arise frequently cases where it may be desirable from one point of view to recall the witness but we have to bring the matter to a conclusion, and I think the matter was rather thoroughly considered on the original trial."

The record shows that the examination of respondent Shackford at the trial was exhaustive, consuming nearly one-half of the more than 600 pages of the reporter's transcript. The matter was one within the sound discretion of the trial court and it does not appear that there was any abuse of discretion, as the case seems to have been thoroughly tried and fully presented.

The record shows that the trial court was confronted with a most unusual situation and with a mass of conflicting and confusing evidence. It is evident that the learned trial judge

gave the cause very thorough consideration. The conflict in the evidence was for the trial court to determine and it was likewise the duty of the trial court to determine what inferences should be drawn from the evidence. We are convinced that there is ample support in the record for the findings of fact made by the trial court and for its conclusions as to the law.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 27, 1953.